OPINION
{¶ 1} Plaintiffs-appellants, Nationwide Mutual Insurance Company ("Nationwide") and Stephen S. Zarcone, appeal from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, American Electric Power ("AEP"). For the following reasons, we reverse and remand. *Page 2 
 {¶ 2} On December 23, 2004, Zarcone awoke early and discovered that his house had no power. Looking out of his daughter's bedroom window, he saw the power line that serviced his house lying on the ground. Apparently, wind and ice from the previous night's winter storm had knocked down a large tree limb, which, in turn, had taken down Zarcone's service drop.[1] Zarcone immediately telephoned AEP and reported the downed line and the lack of electricity. AEP records indicate that it received a telephone call regarding a power outage at the Zarcone residence at 6:20 a.m.
 {¶ 3} Later that day, when no one from AEP had arrived to fix his service drop, Zarcone again telephoned AEP and reiterated the situation.[2] After making his second telephone call to AEP, Zarcone saw an AEP employee standing near a utility pole in front of his house. Zarcone approached the man, who AEP has identified as power line mechanic Sean Dugan, and explained that his service drop was down and his power out. Zarcone asked Dugan for help. Dugan declined, stating that he had to complete a different job. At the time, AEP had assigned Dugan to patrol and repair a different electrical circuit than the circuit that included Zarcone's house.
 {¶ 4} Zarcone returned to his house. Soon thereafter, Zarcone heard "loud pops" or "banging noises" and smelled burning plastic. (Zarcone Dep. at 21.) His appliances "started going haywire" and his TV and stereo began making "high-pitched chirping noises." (Zarcone Dep. at 29.) Zarcone ran to his bedroom, where he encountered smoke and flames. Zarcone evacuated his family from the house and called 911. *Page 3 
Although firefighters doused the blaze, Zarcone's house suffered extensive smoke and fire damage. Nationwide, Zarcone's insurer, compensated him for his losses.
 {¶ 5} On November 28, 2006, Nationwide and Zarcone filed suit against AEP, asserting a single negligence claim. Specifically, appellants alleged that the fire "was directly and proximately caused by the negligence of [AEP], in that [AEP] re-energized power lines after an ice storm, which caused a downed service drop to be energized." (Compl. ¶ 3.)
 {¶ 6} After conducting discovery, AEP moved for summary judgment. In its motion, AEP pointed out that appellants' negligence claim hinged upon their allegation that AEP "re-energized" Zarcone's downed service drop. AEP, however, contended that appellants could not present any evidence proving that Zarcone's service drop ever lost power. Logically, if the service drop never "de-energized," then AEP could not have "reenergized" the line. Therefore, AEP argued, it could not have committed the sole act of negligence asserted in appellants' complaint.
 {¶ 7} AEP based its argument for summary judgment upon the scientific tenets governing the mechanics of its electrical supply system. According to Craig Griffith, an AEP line crew supervisor, AEP transmits electrical energy through primary, high-voltage power lines that connect to transformers, which reduce the voltage level. After a transformer decreases the voltage, secondary lines disseminate power to a small cluster of AEP customers who are in close geographic proximity. Zarcone and four of Zarcone's neighbors receive power from secondary lines connected to the same transformer. Each *Page 4 
house on Zarcone's circuit has its own service drop, which runs from a utility pole to the house and disperses power through an electrical meter inside a metal meter base.
 {¶ 8} Griffith averred in his affidavit that Zarcone's service drop could only have "de-energized" (i.e., lost power) if the transformer or some other apparatus "upstream" malfunctioned.[3] If the transformer stopped working, then all five residences served by the transformer would not have electricity. However, AEP presented evidence that at least one of those five residences had power on December 23, 2004. Donna Baker lives across the street from Zarcone and her house receives power transmitted through the same transformer that serves Zarcone's house. Baker testified that she does not recall losing power prior to the fire.
 {¶ 9} Because the Baker house had electricity, AEP contends that the transformer serving Zarcone's house continued to supply electricity to Zarcone's service drop after the service drop fell. Therefore, as Zarcone's service drop remained energized, AEP asserts that it never had cause or opportunity to "re-energize" the line.
 {¶ 10} Moreover, Griffith, who investigated the fire for AEP, found no record or other indication that AEP ever "re-energized" Zarcone's service drop before the fire. Griffith opined that the fire occurred when wind or ice shifted the energized service drop, causing the "hot" end of the power line to contact the side of the metal meter base. This contact created a short circuit, which briefly restored power to Zarcone's house and ultimately caused the fire.
 {¶ 11} In response to AEP's motion for summary judgment, appellants asserted that two key pieces of evidence created an issue of fact regarding whether AEP "re-energized" *Page 5 
Zarcone's previously "de-energized" service drop. First, appellants relied upon the testimony of their expert witness, Arthur Lawrence Miller. In his deposition, Miller contended that Zarcone's service drop "de-energized" when it fell, and that the fire occurred because AEP "re-energized" the service drop. Second, appellants directed the trial court to a letter written by Kimberly Hamilton, an in-house claims adjuster for AEP. In an April 4, 2005 letter to Nationwide, Hamilton summarized AEP's investigation into the fire and denied appellants' claim for their losses. In relevant part, Hamilton stated, "[t]he power was out for the entire circuit and, therefore, [AEP] checked and fixed the primary line and then re-energized the entire circuit." In her deposition, Hamilton admitted that this statement referred to the circuit that includes the Zarcone house.
 {¶ 12} After setting forth the above evidence, appellants asserted an alternative theory under which AEP acted negligently. Appellants contended that even if AEP did not "re-energize" Zarcone's downed service drop, AEP was negligent because it failed to disconnect the downed service drop from the circuit.
 {¶ 13} In its reply brief, AEP characterized Miller's testimony that the service drop became "de-energized" as mere speculation and assumption. Also, AEP attacked the veracity of Hamilton's statement, pointing out that Hamilton relied upon Griffith for the information underlying the statement, and she admitted that she possibly misunderstood Griffith. Finally, AEP argued that appellants could not assert a new basis for liability (i.e., negligence due to AEP's failure to disconnect the service drop) in response to AEP's motion for summary judgment. *Page 6 
 {¶ 14} After receiving AEP's reply brief, appellants filed a motion to amend their complaint. Appellants sought to add to their complaint a claim alleging that AEP acted negligently "when it failed to disconnect the service drop, after it became aware that the service drop was down." (Proposed Am. Compl. ¶ 4.) AEP urged the trial court to deny the motion, arguing that granting appellants' untimely motion would prejudice AEP. The trial court agreed with AEP, and on January 23, 2008, it issued a decision denying appellants' motion to amend their complaint.
 {¶ 15} The trial court then turned to AEP's pending motion for summary judgment and issued a decision granting that motion. In essence, the trial court found that no genuine issue of material fact existed regarding whether Zarcone's service drop became "de-energized" when it fell. To the contrary, the court found that all the evidence submitted demonstrated that the service drop remained energized, and thus, AEP never "re-energized" it.
 {¶ 16} The trial court entered judgment in AEP's favor on March 31, 2008, and appellants now appeal from that final order. On appeal, appellants assign the following errors:
 [1] THE TRIAL COURT ERRED IN OVERRULING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT, BECAUSE PLAINTIFFS-APPELLANTS PRESENTED AMPLE EVIDENCE OF AN ADDITIONAL CLAIM UPON WHICH RELIEF COULD BE GRANTED, AND THERE WAS NO EVIDENCE PRESENTED THAT THE AMENDMENT WOULD RESULT IN ACTUAL PREJUDICE TO DEFENDANT-APPELLEE.
 [2] THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S-APPELLEE'S MOTION FOR SUMMARY JUDGMENT, BECAUSE THERE WERE GENUINE ISSUES OF MATERIAL FACT REGARDING DEFENDANT'S-APPELLEE'S NEGLIGENCE. *Page 7 
 {¶ 17} By appellants' first assignment of error, they argue that the trial court erred in denying their motion to amend the complaint to add another negligence claim. We disagree.
 {¶ 18} Civ. R. 15(A) provides that a party may seek leave of court to amend its pleading and that leave "shall be freely given when justice so requires." While Civ. R. 15(A) encourages liberal amendment, "motions to amend pleadings pursuant to Civ. R. 15(A) should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party." Turner v. Central Local School Dist. (1999), 85 Ohio St.3d 95,99. In considering a plaintiff's request to amend its complaint, "`a trial court's primary consideration is whether there is actual prejudice to the defendants because of the delay.'" Darby v. A-Best ProductsCo., 102 Ohio St.3d 410, 2004-Ohio-3720, at ¶ 20, quoting Helman v. EPLProlong, Inc. (2000), 139 Ohio App.3d 231, 251. Because the decision of whether to grant or deny a motion to amend is within the trial court's discretion, an appellate court reviews such a ruling under an abuse of discretion standard. Turner, at 99; Wilmington Steel Products, Inc. v.Cleveland Elec. Illuminating Co. (1991), 60 Ohio St.3d 120, 122.
 {¶ 19} In the case at bar, appellants question whether they actually needed to seek leave to amend their complaint in order to litigate whether AEP was negligent in failing to disconnect the downed service line. Appellants contend that the negligence claim they pled in their complaint incorporated two theories of liability: (1) AEP acted negligently when it "re-energized" Zarcone's service drop, and (2) AEP acted negligently when it failed to disconnect the downed service drop. We find this argument unavailing. In the sole paragraph setting forth the substance of their negligence claim, appellants *Page 8 
averred that the fire "was directly and proximately caused by the negligence of [AEP], in that [AEP] re-energized power lines after an ice storm, which caused a downed service drop to be energized." (Compl. ¶ 3.) Thus, rather than assert a general negligence claim that could encompass a variety of theories of liability, appellants limited their claim to whether AEP committed negligence when it allegedly "re-energized" Zarcone's service drop. Appellants, therefore, had to amend their complaint to assert an additional negligence claim when they decided to pursue an alternative theory of liability.
 {¶ 20} Having determined that a motion to amend the complaint was necessary, we now turn to whether the trial court abused its discretion in denying that motion. We find that it did not. Appellants filed their motion to amend on December 14, 2007 — over a year after the filing of the complaint and over a month after AEP filed its motion for summary judgment. Although appellants waited until this late date to file their motion, they relied upon an expert report dated January 18, 2005 as the evidentiary support for their new claim. Thus, appellants knew that they had grounds to assert a negligence claim based upon the failure to disconnect the service drop over a year before they filed their complaint. Based upon this timeline, we conclude that the trial court did not err in finding that appellants unduly delayed the filing of their motion to amend.
 {¶ 21} Moreover, appellants' undue delay would have resulted in prejudice to AEP. Appellants filed their motion to amend after AEP had completed discovery and moved for summary judgment. At the very least, amendment would have necessitated re-opening the discovery period to allow AEP to further depose appellants' expert witness. AEP would also have had to conduct additional pre-trial preparations, including marshalling expert testimony and/or other evidence to refute the new claim. *Page 9 
 {¶ 22} Given appellants' undue delay and the prejudicial effect on AEP, we conclude that the trial court did not abuse its discretion in denying appellants' motion to amend. Accordingly, we overrule appellants' first assignment of error.
 {¶ 23} By appellants' second assignment of error, they argue that the trial court erred in granting AEP summary judgment. We agree.
 {¶ 24} Appellate review of summary judgment motions is de novo.Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547, 548. "`When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.'" Abrams v. Worthington, 169 Ohio App.3d 94,2006-Ohio-5516, at ¶ 11, quoting Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ. R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Gilbert v. SummitCty., 104 Ohio St.3d 660, 2004-Ohio-7108, at ¶ 6.
 {¶ 25} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The moving party does not discharge this initial burden under Civ. R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party *Page 10 
must affirmatively demonstrate by affidavit or other evidence allowed by Civ. R. 56(C) that the nonmoving party has no evidence to support its claims. Id. If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. Id.
 {¶ 26} In order to prove an actionable claim for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach. Jeffers v.Olexo (1989), 43 Ohio St.3d 140, 142. "[A] public utility is required to exercise the highest degree of care consistent with the practical operation of its business in the construction, maintenance, and inspection of its equipment and is responsible for any conduct falling short of that standard." Otte v. Dayton Power Light Co. (1988),37 Ohio St.3d 33, 38.
 {¶ 27} In the case at bar, AEP does not dispute that it owes a duty of care to Zarcone. Instead, AEP argues that appellants cannot prove that AEP breached its duty by "re-energizing" the downed service drop. AEP contends that all the available evidence demonstrates that Zarcone's service drop remained energized after it fell, and thus, AEP could not have acted negligently in "re-energizing" a power line that was never without power. This argument, however, ignores Hamilton's letter to Nationwide in which she stated, "[t]he power was out for the entire circuit and, therefore, [AEP] checked and fixed the primary line and then re-energized the entire circuit." This statement directly contradicts AEP's claim that it never "re-energized" Zarcone's service drop. By setting forth this contradictory evidence in response to AEP's motion for summary judgment, *Page 11 
appellants demonstrated the existence of a material issue of genuine fact that prevented summary judgment.
 {¶ 28} AEP, however, argues that Hamilton's letter is inadmissible hearsay, so appellants could not rely upon it to avoid summary judgment. We disagree. Because AEP did not object to the admissibility of Hamilton's letter before the trial court, it waived any alleged error in the consideration of that evidence. Timberlake v. Jennings, Franklin App. No. 04AP-462, 2005-Ohio-2634, at ¶ 14 ("If a party does not object in the trial court to the introduction of evidence submitted in support of, or in opposition to, a motion for summary judgment, that party waives any error and, thus, cannot raise such error on appeal.");Dick v. Columbus Athenaeum, Ltd. (Dec. 5, 2000), Franklin App. No. 00AP-121 (because the plaintiff failed to argue before the trial court that an affidavit offered in support of a motion for summary judgment contained inadmissible hearsay, he waived any such argument on appeal). Therefore, the trial court could, and did, consider the letter, and this court may also consider the letter in determining the issues on appeal.
 {¶ 29} AEP next attacks the credibility of Hamilton's statement. In her deposition, Hamilton undermined her own credibility, stating that she is not an expert in electricity and that she relied upon Griffith's explanations in order to write the statement at issue. She further acknowledged that she possibly misunderstood Griffith, and she would defer to him. Although Hamilton's deposition testimony likely weakens the credibility of her statement, courts may not weigh the evidence or consider the credibility of witnesses in ruling upon a motion for summary judgment. Santho v. Boy Scouts of Am., 168 Ohio App.3d 27,2006-Ohio-3656, at ¶ 16. See, also, Gessner v. Schroeder, Montgomery App. No. 21498, 2007-Ohio-570, at ¶ 43 ("When material facts are controverted, courts may not *Page 12 
weigh the credibility of witnesses or assess the relative value of their testimony when deciding motions for summary judgment."). As the Supreme Court of Ohio recognized:
 Credibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved. Since resolution of the factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment in such a case is inappropriate.
Turner v. Turner (1993), 67 Ohio St.3d 337, 341.
 {¶ 30} Here, Hamilton's statement conflicts with Griffith's affidavit testimony that AEP never "re-energized" Zarcone's service drop. Thus, a trier of fact must weigh the controverted evidence and determine which witnesses' statement is more credible. Hamilton's inexpertise and possible misunderstanding of Griffith may ultimately lead a trier of fact to discredit her statement, but those factors do not permit a court to disregard her statement on summary judgment. Likewise, the scientific basis underlying Griffith's conclusions may induce the trier of fact to believe his testimony, but a court cannot credit his testimony over Hamilton's statement on summary judgment.
 {¶ 31} Because appellants presented evidence that created a genuine issue of material fact, the trial court erred in granting summary judgment in favor of AEP. Accordingly, we sustain appellants' second assignment of error.
 {¶ 32} For the foregoing reasons, we overrule appellants' first assignment of error, and we sustain appellants' second assignment of error. Consequently, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this case to that court for further proceedings consistent with law and this opinion.
Judgment reversed and cause remanded.
McGRATH, P.J., and BRYANT, J., concur.
[1] In the electrical industry, a secondary power line that runs from a utility pole to an individual house is known as a "service drop."
[2] Although AEP disputes this fact, we must construe all facts in appellants' favor because this appeal challenges the trial court's decision to grant AEP's motion for summary judgment. O'Toole v.Denihan, 118 Ohio St.3d 374, 2008-Ohio-2574, at ¶ 5 (construing the facts in the light most favorable to the nonmoving party while reviewing the grant of summary judgment).
[3] An apparatus "upstream" from a transformer is closer to the power source and farther from the AEP customer than the transformer. *Page 1