DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, in which the trial court granted partial summary judgment to appellees, Marge Cox and the village of Pemberville, Ohio ("Pemberville"), and dismissed claims brought against Cox and Pemberville by appellants, Devon and Brent Stevens and John and Doris *Page 2 
Kukla, under 42 U.S.C. § 1983, as well as the Kuklas' claim against Cox for malicious prosecution. On appeal, appellants, Doris and John Kukla and Brent and Devon Stevens, set forth the following five assignments of error:
 {¶ 2} "Assignment of Error No. I
 {¶ 3} "The trial court erred in its October 16, 2007 pre-trial order and October 17, 2007 amended pretrial order, in reopening and resetting a summary judgment motion cutoff date when the original time limits had expired, and no motion nor showing of excusable neglect having been made therefore.
 {¶ 4} "Assignment of Error No. II
 {¶ 5} "The trial court erred in its October 30, 2007 [sic] granting defendant's leave to respond to plaintiffs admissions [vacating the admissions], and erred in its January 31, 2007 order denying plaintiffs' motion that the subsequent responses not be filed of record.
 {¶ 6} "Assignment of Error No. III
 {¶ 7} "The trial court erred in its October 30, 2007 [sic] granting leave to file an amended answer, and erred in its February 9, 2008 [sic] denying plaintiffs' motion to strike the amended answer as filed, and for sanctions.
 {¶ 8} "Assignment of Error No. IV
 {¶ 9} "The trial court erred in its March 5, 2008 judgment entry in granting summary judgment to the village of Pemberville on the42 U.S.C. § 1983 civil rights claims of Devon and Brent Stevens, and John and Doris Kukla, as Marge Cox's actions as *Page 3 
final policymaker of the village of Pemberville who had final policymaking authority over the municipality's business in which her action was taken.
 {¶ 10} "Assignment of Error No. V
 {¶ 11} "The trial court erred in its March 5, 2008 judgment entry in dismissing the 42 U.S.C. § 1983 civil rights and malicious prosecution claims of John and Doris Kukla against Marge Cox."
 Devon Mowery Stevens[1] {¶ 12} On November 21, 2004, Marge Cox, co-director of Pemberville's Tax Department, initiated a complaint against Devon Stevens in the Bowling Green Municipal Court. In support of the complaint, Cox stated that Devon Stevens failed or neglected to file an income tax return in Pemberville for tax year 2003, in violation of Village Ordinance No. 630. In response, Devon Stevens provided proof that she moved out of Pemberville in April 2003, and she did not earn income while living in Pemberville for the first four months of 2003. On January 15, 2003, the complaint was dismissed.
 {¶ 13} On May 17, 2006, Cox initiated a second complaint against Devon Stevens, in which she alleged that Devon Stevens failed to pay income taxes to Pemberville in 2003, 2004, and 2005. On Sunday, September 9, 2006, at 9:00 a.m., Sandusky County Sheriffs Deputies arrived at Devon Stevens' home in Gibsonburg, Ohio, and arrested her pursuant to a warrant issued by the Bowling Green Municipal Court. Devon Stevens was *Page 4 
handcuffed and eventually taken to the Wood County Jail, where she was held on $30,000 bond until her husband, appellant Brent Stevens, posted bail at 2:30 that afternoon. The Stevens retained an attorney and, after two court appearances, succeeded in obtaining a dismissal of all charges.
 John Kukla {¶ 14} John Kukla lived in Pemberville with his then-girlfriend, Doris Stevens, for approximately two weeks in 2002. The couple were later married and moved out of the village. On May 19, 2006, Cox initiated a complaint against John Kukla in the Bowling Green Municipal Court, in support of which she stated that Kukla failed to file income tax returns in Pemberville in 2002, 2003 and 2004. A copy of the complaint was sent to John Kukla's former Pemberville address; however, it was returned as undeliverable. On June 11, 2006, John Kukla was returning home with his family from a summer vacation when his vehicle was pulled over by an Ohio State Trooper. John Kukla was arrested on an outstanding warrant issued by the Bowling Green Municipal Court. He was taken to the Wood County Jail, and was later released, after posting a $30,000 bond.
 {¶ 15} In response to the complaint, John Kukla provided proof that he temporarily resided in Pemberville for two weeks in 2002, before moving to his current residence in Bowling Green and that, during that two-week period, and for the years 2003 and 2004, he and Doris Stevens, now Kukla, worked and paid income taxes in Bowling Green. Ultimately, John Kukla paid Pemberville $18.59, representing two weeks' taxes *Page 5 
for 2002. The complaint eventually was dismissed at Pemberville's request, without John Kukla appearing in court.
 {¶ 16} On November 6, 2006, Devon and Brent Stevens and John and Doris Kukla filed the joint complaint herein, in which they alleged that Cox, acting within the scope of her employment, improperly caused criminal actions to be filed against Devon Stevens and John Kukla. As a result, there was no probable cause to support criminal action against either Devon Stevens or John Kukla. The complaint further stated that Devon Stevens and John Kukla were "deprived of their liberty and property, without due process of law, in violation of the Fourteenth Amendment [to the United States Constitution]." The complaint further alleged that such conduct "was unreasonable, shocking to the conscience, and done with reckless disregard of [Devon Stevens' and John Kukla's] constitutional rights" in violation of 42 U.S.C. § 1983. Both plaintiffs claimed they suffered "deprivation of liberty, mental and emotional distress, [and] humiliation and insult," while their spouses claimed to suffer "loss of care and consortium" due to Cox's and Pemberville's actions.
 {¶ 17} In addition to constitutional claims, the complaint also alleged that the filing of criminal actions against Devon Stevens and John Kukla constituted malicious prosecution in that they were intentional, without probable cause, and malicious, and caused Stevens and Kukla to suffer needless incarceration and incur "substantial financial expense, mental and emotional anguish, humiliation and insult." Both Devon Stevens *Page 6 
and John Kukla sought damages under both their civil rights and malicious prosecution claims, in the form of compensatory and punitive damages and court costs.
 {¶ 18} Cox and Pemberville filed a joint answer on January 8, 2007. A pretrial order was journalized on January 19, 2007, in which the trial court set the cutoff date for filing summary judgment motions for July 16, 2007. The discovery cutoff date was August 29, 2007. An unsuccessful attempt at mediation was followed by a pretrial conference on September 14, 2007, at which a final trial date was set for October 10, 2007. However, on September 20, 2007, an entry of appearance for additional co-counsel was filed on behalf of Cox and Pemberville.
 {¶ 19} On September 21, 2007, new co-counsel filed a motion to vacate the October 10 trial date, which the trial court granted on September 27, 2007. That same day, Stevens and Kukla filed a "Notice of Filing of Plaintiff s Requests for Admissions-Unanswered" in which they stated that, as of that date, Cox and Pemberville had not answered requests for admissions filed on July 7, 2007. On October 15, 2007, Cox and Pemberville filed a motion for leave to answer the admissions, in which they stated that the admissions were not previously answered because new co-counsel had recently been retained, and Stevens and Kukla did not provide Cox and Pemberville with the admissions in electronic format, as required by Civ. R. 36(A). Cox and Pemberville also filed a motion for leave to amend their answer.
 {¶ 20} On October 17, 2007, the trial court issued an amended pretrial order which established the following relevant dates: (1) summary judgment, December 7, 2007; (2) *Page 7 
cutoff for discovery and depositions, January 22, 2008; (3) mediation, January 22, 2008, and expert depositions, February 19, 2008. A new trial date was set for March 4, 2008.
 {¶ 21} On October 19, 2007, Stevens and Kukla filed a memorandum opposing Cox's and Pemberville's request for leave to answer the admissions, on grounds that the original admissions were deemed admitted when they were not answered within 28 days. Steven and Kukla further argued that Cox and Pemberville should not be relieved of the consequences of having ignored the original deadlines for discovery and answering the admissions. On the same day, Stevens and Kukla filed a memorandum opposing the amendment of the answer, on grounds that is it "unfair to plaintiffs who have complied with all court orders in preparation for trial" and "would require reopening of discovery depositions." Stevens and Kukla further argued that Cox and Pemberville made no showing of excusable neglect as required by the Civil Rules.
 {¶ 22} The case was referred to mediation for the second time on October 22, 2007. On October 30, 2007, the trial court overruled Stevens' and Kukla's objections and granted the motions to file an amended answer and to answer the request for admissions. On December 14, 2007, Stevens and Kukla asked the trial court not to file Cox's and Pemberville's response to the admissions in the record, which was denied on January 31, 2008. That same day, Stevens and Kukla also filed a motion to strike the amended answer and for sanctions pursuant Civ. R. 11 and R.C. 2323.51(A)(2)(a), which was denied on February 8, 2008. *Page 8 
 {¶ 23} On February 13, 2008, Cox and Pemberville filed a motion for summary judgment, in which they asserted that the claims against them were barred by either absolute or qualified immunity, and the complaint failed to state a cognizable claim for malicious prosecution. Stevens and Kukla filed a memorandum in opposition to summary judgment on February 29, 2008, in which they stated, as to liability for damages pursuant to 42 U.S.C. § 1983, that: (1) Pemberville is not immune from liability because Cox's refusal to investigate prior to initiating criminal proceedings was based on a longstanding village policy; (2) Cox is liable because she filed the complaints without first establishing probable cause; (3) although Pemberville is not liable for punitive damages, Cox is liable due to her maliciousness and wanton disregard for Stevens' and Kukla's constitutional rights. As for damages due to malicious prosecution, Stevens and Kukla stated that, although Pemberville enjoys statutory immunity from liability for malicious prosecution, Cox enjoys no such immunity.
 {¶ 24} Attached to the memorandum in opposition were copies of the second amended answer; Pemberville Ordinance No. 630; Cox's affidavit; a blank Pemberville Income Tax form; the tax complaints filed against Devon Mowery Stevens and John Kukla, III; and a Pemberville utility form filled out by Doris Stevens Kukla in which she stated that John Kukla lived in Pemberville as of February 11, 2002. The depositions of Doris Kukla, Devon Stevens, Dewey "Brent" Stevens, and John Kukla, III, were also made part of the record. *Page 9 
 {¶ 25} Cox stated in her deposition that, as co-director of Pemberville's tax department, she has never asked a taxpayer to come to her office. Cox further stated that the village gets residency information from forms filled out to receive village utilities, or from landlords of leased properties. Cox testified that it is the taxpayers' duty to inform the village of any changes in their residency or income. Consequently, a complaint was filed against Kukla[2] because he did not inform the village that he moved out of Pemberville after two weeks. Similarly, a complaint was filed against Devon Stevens because she did not inform the village that she had no income in 2003, or that she moved out of Pemberville in 2003. Cox further testified that she does not follow up on the status of a complaint once it is filed.
 {¶ 26} Cox stated that she files "15 or so" tax-related complaints each year, and she is aware that warrants are issued, and sometimes people are arrested, after a tax complaint is filed. Cox further stated that, pursuant to Ordinance 630, all taxpayers have a duty to file a tax return, regardless of whether they have income. Cox also stated that she does not attempt to verify addresses before sending out letters advising residents that they need to file a tax form, and that if a tax mailing comes back to her office unopened, she confers with the village prosecutor as to whether or not criminal charges should be filed. *Page 10 
 {¶ 27} John Kukla, III, testified in his deposition that he and his then-girlfriend, Doris Stevens, lived in Pemberville for two weeks in February 2002, in an apartment where the lease was in only Doris' name. Kukla further testified that before, during, and after he lived in Pemberville, he was employed at Behavioral Connections in Bowling Green, Ohio, and paid income taxes in Bowling Green. John stated that he was pulled over and arrested in June 2006 by an Ohio State trooper, while his family was returning from a camping vacation. He was then handcuffed and placed in the police car and driven to the Wood County Jail, where he was held on $30,000 bail. The next day he appeared in Bowling Green Municipal Court, where he asked for a public defender. John further stated that he met with Pemberville's prosecutor at the courthouse, and was told he needed to show proof that he did not live in Pemberville. Ultimately, John paid the village $18.59 in taxes for the two weeks he lived in Pemberville. His $300 bail bond deposit was never returned, and he missed three days of work. In addition, several months later, John was told that he had outstanding court fines, which he paid to avoid being returned to jail.
 {¶ 28} Doris Kukla testified in her deposition that she filled out forms to obtain Pemberville electric service in February 2002, and she named John Kukla as a resident in her apartment. However, she never filled out a tax form stating that she and John lived in Pemberville. Doris also testified that, when she and John left the apartment, she told the village she was leaving so she could get her utility deposit back. Since the utilities were in her name, she did not tell them John also was moving. Doris stated that, after John's *Page 11 
arrest, the Kuklas were told that John had to file an income tax return and pay $18 in back taxes and $85 in fines so the charges would be dropped. Although John paid the taxes and fine the records were never sealed, as promised by the village prosecutor.
 {¶ 29} Devon Mowery Stevens testified in her deposition that she lived in Pemberville from March 2000 until April 2003, when her family purchased a home and moved to Gibsonburg, Ohio. Devon further testified that she worked at Otterbein Portage Valley Retirement Home in Pemberville until August 2002, after which she earned no income for the remainder of the time she lived in the village. Devon stated that she did not notify the village that she was moving; however, she cancelled her telephone and cable accounts, and arranged for her mail to be forwarded to Gibsonburg.
 {¶ 30} Devon testified that she first received a notice of tax delinquency for 2003, on January 7, 2005. She called Cox, who referred her to the village prosecutor. Devon further testified that the prosecutor told her she did not need to go to court, and the complaint for 2003 unpaid back taxes was dismissed on January 14, 2005. The next time Devon heard anything about back taxes was on September 10, 2006, when she was arrested and taken to the Wood County Jail, where she was held on $30,000 bond. Devon stated that, after making two court appearances, she hired an attorney. Although the charges were eventually dismissed, her $300 bond deposit was not returned, and she missed many days of work due to court appearances. Devon testified that, in her opinion, Cox and the village acted intentionally and maliciously in causing her arrest. *Page 12 
 {¶ 31} Dewey "Brent" Stevens, Devon's husband, testified in his deposition that he also was charged for not paying Pemberville income taxes in 2002 and 2003; however, the charges were eventually dismissed and he was never arrested. Brent stated that he notified the landlord when he and Devon left their apartment in Pemberville and moved to Gibsonburg. Brent stated that after Devon was arrested, he had to charge the $3,000 (ten percent) bond to a credit card and miss a day's work to get his wife out of jail. Brent further stated that he believed Devon's arrest was intentional, not negligent, because it would have been easy to check records to verify that she did not owe any taxes to Pemberville.
 {¶ 32} On February 29, 2008, Stevens and Kukla filed a memorandum in opposition to summary judgment, in which they argued that Pemberville is not immune from liability pursuant to 42 U.S.C. § 1983, because Cox possessed final authority to establish and execute the village's tax policy. They further argued that, in exercising her authority, Cox failed to use any of her investigative powers to determine whether an individual is required to file an income tax return, and failed to review her own agency's files to determine whether a prior case was dismissed before re-filing the same charges. Stevens and Kukla also argued that Cox is liable for malicious prosecution because she had no probable cause to charge Devon Stevens a second time for failing to pay taxes in 2003, or for charging her for failure to pay taxes in 2004 and 2005, without any information that Devon either lived in Pemberville or earned income in Pemberville during that time period. *Page 13 
 {¶ 33} In addition to the above, Stevens and Kukla alleged that, pursuant to Ordinance 630, a "resident" only becomes a "taxpayer" when he or she earns income, and only "taxpayers" have a duty to file an income tax return. Consequently, Cox had no probable cause to believe Devon Stevens or John Kukla were delinquent taxpayers at the time the complaints were filed.
 {¶ 34} On March 5, 2008, the trial court filed a decision in which it found that Pemberville's longstanding policies of requiring all residents to file an income tax return did not deprive Pemberville's citizens of any of their constitutional rights, because criminal complaints were only filed in cases where the was some evidence that a Pemberville resident did not submit a return. Accordingly, summary judgment was granted to Pemberville on that issue, and Stevens' and Kukla's civil rights claims against the village were dismissed. Similarly, the trial court found that Cox properly implemented Pemberville's policies in regard to John Kukla, and dismissed Kukla's § 1983 complaint against Cox on that basis. However, the trial court found that a finder of fact could conclude that Cox reasonably should have taken note of the dismissed 2003 complaint against Devon Stevens. Accordingly, Cox's motion for summary judgment was denied on that issue.
 {¶ 35} As to the claims for malicious prosecution, the trial court found that a jury could conclude that the filing of the second criminal complaint against Devon Stevens was wanton and reckless, thereby exposing Cox to liability for malicious prosecution. However, the trial court concluded that Kukla had not met the requirements for a claim of *Page 14 
malicious prosecution against Cox, since the action was dismissed only after Kukla paid $18.59 in taxes. Finally, the trial court found, as a matter of law, that Pemberville is immune from suit for malicious prosecution pursuant to R.C. 2744.03(A). Accordingly, Kukla's malicious prosecution claim against Cox was dismissed, as were Stevens' and Kukla's malicious prosecution claims against Pemberville. A timely notice of appeal was filed by appellants, Devon and Brent Stevens and John and Doris Kukla.
 {¶ 36} In their first assignment of error, appellants assert that the trial court abused its discretion by continuing the trial date to March 4, 2008, and moving the cutoff date for summary judgment motions to December 7, 2007. In support, appellants argue that, pursuant to Civ. 6(B)(2), the trial court does not have discretion to relieve appellees from the consequences of failure to comply with pretrial cutoff dates, because appellees did not file a motion for untimely filing and make a showing of excusable neglect.
 {¶ 37} We note at the outset that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 38} It is well-settled that the trial court has wide discretion in controlling its docket, including the decision to grant or deny a continuance. Adyin Co. Exchange, Inc. *Page 15 v. Marling Realty (1997), 118 Ohio App.3d 274, 278, citing Hartt v.Munobe (1993), 67 Ohio St.3d 3, 9. On appeal, the trial court's decision will not be reversed absent a finding of abuse of discretion. State v.linger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 39} As to the trial court's decision to set a new trial date, the Supreme Court of Ohio has held that there is no "mechanical test" for deciding when to grant to deny a motion for a continuance. State v.linger, supra, 65, 67, citing Ungar v. Sarafite (1964), 376 U.S. 575,589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921. Instead, the court must engage in a balancing test, taking into account the competing considerations of the parties. Id. In so doing, the court should note: "the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Id., citing United States v. Burton (C.A.D.C. 1978), 584 F.2d 485, certiorari denied 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34.
 {¶ 40} The record does not show any requests for continuances by either party other than the one filed by Pemberville and Cox on September 21, 2007. In their motion *Page 16 
in opposition, appellants contrasted their own attorney's readiness to go to trial on October 10, 2007, with Pemberville's and Cox's failure to mediate a settlement and last-minute decision to hire additional counsel who was not "up to speed" on the case. They concluded by stating that "Defendants' failure to act in a timely fashion does not justify a continuance of the trial, especially when plaintiffs have acted in accordance with the Court's orders, and have prepared for the scheduled trial date." Nevertheless, in its order vacating the original trial date, the trial court found, after being "fully advised" in the matter, that the motion to vacate was well-taken.
 {¶ 41} After carefully examining the entire record in this case, we conclude that the trial court did not abuse its discretion by vacating the original trial date. We further find that the trial court did not abuse its discretion by setting a new deadline for summary judgment motions to be filed, since the result was to allow the resolution of the parties' dispute on the merits, and not on procedural grounds. In addition, we note that appellants never objected to the new summary judgment deadline in the trial court. See Duffy v. Nourse Family ofDealership-Chillicothe, Inc., 4th Dist. No. 05CA2846, 2006-Ohio-2057, ¶ 12
(Failure to object to a change of deadline for a dispositive motion in the trial court waives the error alleged on appeal.)
 {¶ 42} On consideration of the foregoing, this court finds that the trial court did not abuse its discretion by vacating the original trial date and setting a new date, or by setting a later date for the filing of summary judgment motions. Appellants' first assignment of error is not well-taken. *Page 17 
 {¶ 43} In their second assignment of error, appellants assert that the trial court erred by allowing appellees to respond to their request for admissions after the deadline for doing so had passed. In support, appellants argue that appellees' initial failure to answer their request for admissions within 28 days resulted in those matters being admitted by default pursuant to Civ. R. 36(A). Accordingly, allowing appellees to answer the admissions in an untimely fashion is the same as improperly vacating those default admissions without the showings required by Civ. R. 6(B)(2) and 36(B).
 {¶ 44} We note initially that Civ. R. 6(B)(2) governs extensions of time for a party to perform an act or complete a response which "is required or allowed to be done at or within a specified time." In such cases, the trial court may allow additional time only if a request is made before the expiration of the original time period has occurred, or where the movant makes a showing of excusable neglect. However, in this case, appellees sought to vacate admissions that were already made in accordance with Civ. R. 36(A). The vacation of admissions is governed by Civ. R. 36(B), which does not mention a showing of "excusable neglect." See Hanchar Ind. Waste Mgmt, Inc. v. Wayne Reclamation Recycling,Inc. (Ind. 1981), 418 N.E.2d 268, 270. The requirements of Civ. R. 6(B)(2), therefore, do not apply in this case.
 {¶ 45} Civ. R. 36 states, in pertinent part, as follows:
 {¶ 46} "(A) Availability; procedures for use
 {¶ 47} "* * * *Page 18 
 {¶ 48} "The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. * * *
 {¶ 49} "(B) Effect of admission
 {¶ 50} "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits. * * *"
 {¶ 51} The Ohio Supreme Court has stated that the provision allowing a party to withdraw an admission under the conditions stated in Civ. R. 36(B) "emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice." Cleveland Trust Co. v. Willis (1985), 20 Ohio St.3d 66,67. Accordingly, Civ. R. 36(B) "does not require the filing of a written motion, nor does it specify when a motion to withdraw or amend should be made." Balson v. Dodds (1980), 62 Ohio St.2d 287, fn. 2;Kutscherousky v. Integrated Communications Solutions, LLC, *Page 19 
5th Dist. No. 2004 CA 00338, 2005-Ohio-4275, ¶ 17, citingBalson, supra, at paragraph two of the syllabus. In other words, the trial court is directed to focus on the "`effect upon the litigation and prejudice to the resisting party' * * * rather than focusing on the moving party's excuses for an erroneous admission. * * *"Kutscherousky, supra, quoting F.D.I.C. v. Prusia (8th Cir., 1994), 18 F.3d 637, 640. (Other citations omitted.)
 {¶ 52} The term "subserve" has been defined as "to promote the welfare or purposes of or "to serve as a * * * means in carrying out."Webster's Ninth New Collegiate Dictionary, 1176 (1985). In the context of Civ. R. 36(B), the burden is placed "on the moving party to show how withdrawal or amendment of the admissions would assist in reaching a just resolution of the action on its merits. With regard to this, the federal courts have held that this burden is clearly met when the effect of denying a motion to withdraw and amend would `practically eliminate any presentation of the merits.'" Kutscherousky, supra, ¶ 19, quotingWestmoreland v. Triumph Motorcycle Corp. (D. Conn. 1976), 71 F.R.D. 192,193. In such cases, "presentation of the merits is subserved by permitting withdrawal * * *." Id., citing Pleasant Hill Bank v.United States (W.D.Mo. 1973), 60 F.R.D. 1. (Other citations omitted.)
 {¶ 53} In its October 30, 2007 order, after recognizing the "balancing test" set forth in Civ. R. 36(B), the trial court noted that the rescheduled trial date was not until March 2008. The trial court also recognized that appellants had not provided appellees with an electronic copy of the requests for admissions, as required by Civ. R. 36(A), arguably tolling the time period in which to respond to those requests. Thereafter, the *Page 20 
trial court granted appellees' motion for leave to respond to the request for admissions. As set forth above, on December 14, 2007, appellants asked the trial court for an order prohibiting those responses from being a part of the record.
 {¶ 54} In its January 31, 2008 order, the trial court stated that appellees had been "less than diligent in defending this case and pursuing appropriate discovery of [appellants'] claims." The court then reviewed appellees' responses to particular requests for admissions regarding whether or not appellant Devon Stevens earned income and/or resided in Pemberville in 2003, 2004 and 2005. The trial court concluded that specific knowledge as to whether or not Devon Stevens earned income and/or resided in Pemberville in 2003, 2004 and 2005 "is a matter particularly known by [her]." Accordingly, appellees' objections based on lack of sufficient knowledge did not violate Civ. R. 36(A). For similar reasons, the trial court found that appellees' responses to requests for admissions as to whether appellant John Kukla earned income and/or resided in Pemberville were not in violation of Civ. R. 36(A). Accordingly, the motion to keep appellees' responses from being admitted into the record was denied.
 {¶ 55} A review of the record shows that the subject matter of these requests goes to the heart of the case against appellees. Therefore, we cannot say that the trial court abused its discretion by allowing appellees to respond, or by denying the request to keep them from being included in the record, particularly where there was sufficient time for appellants to conduct additional discovery based on appellees' responses, and appellants had yet to comply with Civ. R. 36(A) by providing appellees with an electronic copy of *Page 21 
the requests for admissions. Accordingly, appellants' second assignment of error is not well-taken.
 {¶ 56} In their third assignment of error, appellants assert that the trial court erred by allowing appellees to amend the answer and by denying appellants' motions to strike the amended answer and for sanctions. In support of the first assertion, appellants argue that allowing appellees to file an amended answer is the same as allowing appellees to "withdraw" any admissions made in their prior answer. In support of the second assertion, appellants argue that appellees should not be allowed to assert a lack of knowledge in response to "the majority of the paragraphs of the complaint" when, in fact, many of the allegations in the complaint were made "concerning matter which are public record, and within [appellees'] knowledge, and to which they had already provided interrogatory answers, and sworn deposition testimony * * *." Accordingly, appellants seek sanctions for what they characterize as the filing of a "sham pleading."
 {¶ 57} As to appellants' first assertion, generally, parties are bound by written admissions made by them during the course of a case.Peckham Iron Co. v. Harper (1884), 41 Ohio St. 100, 106. Accordingly, "[p]arties cannot simply repudiate their written admissions at pleasure." Duncan v. Charter One Bank, 4th Dist. No. 02CA2855, 2003-Ohio-1907, ¶ 15, citing Peckham at 106; Civ. R. 15; Badalamenti v.Kirkland (Nov. 29, 1991), Lake App. No. 90-L-15-151. Nevertheless, pursuant to Civ. R. 15(A), a party may seek to amend his pleading, with leave of court, in cases where the time for an amendment as a matter of course has passed. Hoover v. Sumlin (1984), 12 Ohio St.3d 1, *Page 22 
3. Civ. R. 15(A) further states that "[l]eave of court should be freely given when justice so requires."
 {¶ 58} While the rule encourages liberal amendment, a motion to amend pleadings should only be granted absent "bad faith, undue delay, or undue prejudice to the opposing party." Turner v. Central Local SchoolDist. (1999), 85 Ohio St.3d 95, 99. In considering such a request, the trial court should consider whether there will be "actual prejudice" to the non-moving party because of delay. Nationwide Mut. Ins. Co. v.American Elec. Power, 10th Dist. No. 08AP-339, 2008-Ohio-5618, ¶ 8, citing Darby v. A-Best Products Co., 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 20.
 {¶ 59} Ultimately, the decision whether or not to grant a motion for leave to amend a pleading is within the sound discretion of the trial court. Rossetti v. OM Financial Life Ins. Co., 5th Dist. No. 2008CA00083, 2008-Ohio-5889, ¶ 12. As set forth above, an abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 60} In addition, we note that, for procedural purposes, an amended pleading which asserts a defense arising from the same conduct, transaction, or occurrence set forth in the original pleading "relates back" to the original pleading. Duncan, supra, ¶ 16. Therefore, "[o]nce the court accepts an amended pleading, the party's original admission to a material fact is no longer conclusive evidence of that fact.Hersch at 375, * * *; Badalamenti, supra." Duncan, supra. "However, the amended pleading does not * * * *Page 23 
wipe out the original altogether. Rather, any admissions contained in the original pleading still may be offered as evidence, even after a party has amended his original pleading with leave of the court.Hersch v. E. W. Scripps Co. (1981), 3 Ohio App.3d 367, 375 * * *;Badalamenti, supra.
 {¶ 61} In this case, the trial court permitted appellees to amend their answer, after considering the circumstances of this case, including the long-standing policy in favor of resolving disputes on the merits and not on technical grounds, and finding that no "undue prejudice" would result to appellants. Accordingly, we cannot find that the trial court abused its discretion by granting appellants' motion to file amended answers and thereby allowing the case to proceed on its merits. Appellants' argument to the contrary is without merit.
 {¶ 62} As to appellants' second assertion, pursuant to Civ. R. 12(f), the trial court may, upon proper motion by a party or on its own initiative, "order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." It is well-settled that the trial court's denial of a motion to strike a pleading will not be overturned on appeal absent an abuse of discretion.Squire v. Geer, 117 Ohio St.3d 506, 2008-Ohio 1432, ¶ 10.
 {¶ 63} On February 8, 2008, after reviewing both the complaint and each of the amended answers, the trial court denied appellants' motion to strike the amended answer. In so doing, the trial court noted that, absent completion of further discovery, appellees could not fully answer paragraphs one and two of the complaint. The trial court further *Page 24 
found that appellees were not obligated to admit the allegations in paragraph four which was, essentially, a summary of appellants' legal theories as to the violation of their civil rights and malicious prosecution. The trial court found that paragraphs 7 through 12 and 16 through 18 formed the "core" of appellants' case, and granted appellees leave to file a second amended complaint to answer those allegations upon completion of discovery. Finally, in response to appellants' attack on several of appellees' affirmative defenses, the trial court found "that there is a colorable basis for asserting all of the affirmative defenses in the amended answer."
 {¶ 64} On consideration, we find that the trial court's decision to deny the Civ. R. 12(f) motion to strike was not an abuse of discretion. Similarly, on these facts, we find no abuse of discretion in the trial court's refusal to impose sanctions under Civ. R. 11 or R.C. 2323.51. SeeOmerza v. Bryant Stratton, 11th Dist. No. 2006-L-147, 2007-Ohio-5216. Appellants' arguments to the contrary are without merit.
 {¶ 65} For the foregoing reasons, appellants' third assignment of error is not well-taken.
 {¶ 66} In their fourth assignment of error, appellants assert that the trial court erred by finding that Pemberville is not liable to Stevens and Kukla pursuant to 42 U.S.C. § 1983. In support, appellants argue that, pursuant to a "strict construction" of Ordinance 630, only those "persons" with taxable wages, salaries, or other compensation" are considered "taxpayers" who are required to file a village tax return. Accordingly, since Stevens earned no income in Pemberville in 2003, 2004, or 2005, and Kukla never *Page 25 
actually resided in Pemberville, their civil rights were violated when Cox enforced Pemberville's longstanding custom of filing criminal charges without investigating or otherwise determining: (1) whether the targeted individuals are residents of Pemberville; and (2) "whether they earned any taxable income" during the applicable tax years.
 {¶ 67} Pursuant to 42 U.S.C. § 1983:
 {¶ 68} "Every person who, under color of any statute, * * * custom, or usage, of
 {¶ 69} any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * * or other proper proceeding for redress * * *."
 {¶ 70} The United States Supreme Court has held that "[l]ocal governing bodies * * * can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where * * * the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer." Monell v. Department of Social Svcs (1978),436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id., at 694. *Page 26 
 {¶ 71} Section 1 of Pemberville's "Ordinance Levying Municipal Income Tax," herein referred to as Ordinance 630, states that the purpose of the village income tax is "[t]o provide funds for the purposes of general municipal operations * * *." Pursuant to section 3(a), in accomplishing the goals of section 1, the village is authorized to collect a one percent income tax on all "salaries, wages, and other compensation" earned by village "residents." A "resident" is defined by Ordinance 630 as "an individual domiciled in the village." Section 2(q). To effectuate Section 5(a), each "taxpayer" is required to file a tax return on or before April 30, regardless of whether or not a tax is actually due. A "taxpayer" is somewhat circularly defined by Ordinance 630 as "a person, whether an individual, partnership, association or any corporation or other entity, required hereunder to file a return or pay a tax." Id., Section 2(u).
 {¶ 72} The trial court found, and appellees argue, that Ordinance 630 requires every resident of Pemberville, regardless of whether that individual ever earned an income, to file a tax return. However, given the stated purpose of Ordinance 630, it would be superfluous to require individuals who do not earn an income to file a tax return. Accordingly, the better interpretation of the term "taxpayer," as used in Ordinance 630, is a person who becomes a resident by virtue of establishing a domicile in Pemberville, and who earns a salary, wages, or other compensation in a given year that is, at least arguably, subject to the village income tax.
 {¶ 73} Section eight of Ordinance 630, which describes the duties of Pemberville's Tax Administrator, states that the administrator has the power "to adopt and promulgate *Page 27 
and to enforce rules and regulations relating to any matter or thing pertaining to the collection of taxes and the administration and enforcement of the provisions of this ordinance * * *." Section 8(e) states that, if a taxpayer fails to file a return or has filed an incorrect return, the administrator "may determine the amount of tax appearing to be due the village from the taxpayer and shall send to such taxpayer a written statement showing the amount of tax so determined, together with interest and penalties thereon, if any." Pursuant to Section 17, a taxpayer who fails, neglects, or refuses to file a return or pay any taxes due, or who refuses to appear before the administrator when summoned and/or allow the administrator to examine his records relating to taxes owed to the village, is guilty of a first degree misdemeanor, and can be fined up to $1,000 and/or imprisoned for up to six months for each offense.
 John Kukla {¶ 74} The trial court dismissed Kukla's § 1983 claim against the village, after determining that Pemberville's longstanding policy of issuing criminal complaints without first exercising its investigatory powers did not violate Kukla's constitutional rights. Specifically, the trial court found that the policy "required some evidence that an individual resided in Pemberville and did not file an income tax return." In the trial court and on appeal, Kukla alleges that summary judgment was improper because questions of fact remains as to whether Cox had probable cause to believe he was a resident of Pemberville during his two-week stay in the apartment, or that he earned any income during the time in which he may have been a Pemberville resident. *Page 28 
 {¶ 75} In Ohio, a "domicile" is seen as "a permanent legal residence that the taxpayer intends to use for an indefinite or unlimited period, and to which, when absent, the taxpayer intends to return. An individual has only one domicile." City of Perrysburg v. Kluge (Nov. 9, 1995), 6th Dist. No. WD-95-034, citing Cleveland v. Surella (1989),61 Ohio App.3d 302, 304. "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation."Cleveland v. Surella, supra, at 307. In order to demonstrate that his or her tax residence is in a particular municipality, a person must prove by a preponderance of the evidence that he or she intended to abandon a domicile in another locality and settle there permanently.Kluge, supra; Surella, supra.
 {¶ 76} It is undisputed that Doris Kukla reported John Kukla as a "resident" in her Pemberville apartment when she signed up for public utility services. That information was transmitted to Pemberville's tax department, where it became available to Cox. It is also undisputed that when Doris moved out of the village she reported her own change of address, but not that of John Kukla.
 {¶ 77} Pemberville's policy, as set forth above, states that Coxmay investigate and determine the amount of tax due; however, at her discretion, she is not required to do so. Accordingly, when Cox filed the complaint against John Kukla for failure to pay municipal income taxes in 2002, 2003 and 2004, she had at least some evidence that he had resided in the village, even though, after the initial inquiry letter was returned, she *Page 29 
elected not to investigate further before filing a complaint. However, even though Kukla admitted in his deposition that he was employed while living in Doris' apartment in Pemberville, no evidence was presented that Cox knew Kukla had earned wages, salary or other income while residing in the village at the time the complaint was filed. SeeState v. Cabell, 6th Dist. No. L-06-1026. (Facts to establish probable cause must be in existence at the time of arrest. Id., ¶ 27) As set forth above, pursuant to Ordinance 630, only "taxpayers" are required to file an income tax return, and a resident of Pemberville does not become a "taxpayer" until he or she has earned income in some form. Accordingly, a genuine issue of fact exists as to whether, at the time the complaint was filed, John Kukla qualified as a "taxpayer" as defined in Ordinance 630.
 Devon Stevens {¶ 78} Devon Stevens' § 1983 claim against the village differs from that of Kukla. As set forth above, two separate actions for unpaid taxes were brought against Stevens. The first action, filed in 2004, alleged that Stevens did not pay income taxes in 2003. That complaint was dismissed when Stevens presented proof that she did not reside in Pemberville after April 2003, and did not earn any taxable income during that year. Nevertheless, a second complaint was filed in 2006, alleging that Stevens did not pay taxes in 2003, 2004 or 2005, which resulted in her arrest and incarceration.
 {¶ 79} Cox, acting on behalf of Pemberville, had evidence that Stevens had, at one time, lived in the village of Pemberville and that she earned income during that time. However, Cox had further conclusive evidence at her fingertips that Stevens did not *Page 30 
reside in Pemberville in 2003, 2004 or 2005, and did not earn any income in Pemberville, or anywhere else, in 2003. Cox testified in her deposition that she elected not to investigate the facts before filing the second complaint against Stevens.
 {¶ 80} On appeal, appellees rely on the trial court's finding that the village cannot be held liable for Cox's failure to acknowledge the dismissal of the first complaint against Stevens. However, inMonell, supra, the United States Supreme Court held that municipalities cannot be held liable under § 1983 for employing a tortfeasor "unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id., at 691. (Emphasis added.) It is undisputed that Cox's discretion to investigate or not investigate was written into Ordinance 630 and, as the trial court observed, it was Pemberville's longstanding policy not to investigate before filing criminal charges for nonpayment of income taxes. Accordingly, a genuine issue of material fact remains as to whether Cox was acting pursuant to Pemberville's policy which, in turn, caused a constitutional tort to occur.
 {¶ 81} On consideration of the foregoing, we find that the trial court erred by concluding that Pemberville's policy in no way caused constitutional injury to both Devon Stevens and John Kukla, and granting summary judgment to the village on those issues. Appellants' fourth assignment error is well-taken.
 {¶ 82} In their fifth assignment of error, Doris and John Kukla assert that the trial court erred by dismissing John Kukla's § 1983 claim and malicious prosecution claim against Cox. We will address each of these claims separately. *Page 31 
 {¶ 83} In support of their § 1983 claim, appellants argue that Cox did not have probable cause to arrest John Kukla because he did not reside in Pemberville, and Cox had no knowledge that he earned income in 2003, 2004 or 2005. As set forth above, pursuant to 42 U.S.C. § 1983:
 {¶ 84} "Every person who, under color of any statute, * * * custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law * * * or other proper proceeding for redress * * *."
 {¶ 85} Political subdivisions are immune from claims for damages caused solely by the acts of an employee. Monell, supra, at 694. Pursuant to R.C. 2744.03(A)(6)(b), public employees also enjoy immunity for their own acts, unless such acts are performed with malicious purpose, in bad faith, or in a wanton or reckless manner. However, the immunity granted by R.C. Chapter 2744 does not apply to "alleged violations of the constitution or statutes of the United States * * *." R.C. 2744.09(E) Finally, R.C. 2744.07 requires a political subdivision to defend any employee in an action to recover damages in a civil case, if the employee "was acting in good faith and not manifestly outside the scope of his employment or official responsibilities."
 {¶ 86} At the time the complaint was filed against John Kukla, Cox had no knowledge of whether or not Kukla was employed or was otherwise earning income from any source. Therefore, an issue of fact remains as to the impact of Cox's failure to *Page 32 
ascertain whether John Kukla had income before charging him with the criminal offense of failure to file a municipal income tax return. A further issue of fact remains as to whether Cox acted in good faith and within the scope of her official duties, thereby entitling her to indemnification pursuant to R.C. 2744.07. Accordingly, the Kuklas' claim that the trial court erred by dismissing their § 1983 claims against Cox has merit.
 {¶ 87} As to the Kuklas' remaining claim, the purpose of the tort of malicious prosecution is "to compensate a wrongly accused criminal defendant for the damages caused by misuse of criminal actions.Smitek v. Peaco (Aug. 17, 1994), 9th Dist. No. 93CA005703, citingCriss v. Springfield Twp. (1990), 56 Ohio St.3d 82, 84. The elements of malicious prosecution which must be shown by the plaintiff are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." Criss, supra.
 {¶ 88} In this case, the trial court found that Kukla's tax payment of $18.59 for tax year 2002, ultimately resulted in dismissal of criminal charges against him. Accordingly, Kukla failed to meet the third element necessary for malicious prosecution, i.e., termination of the prosecution in favor of the accused. However, the Kuklas argue on appeal that the prosecution was, in fact, terminated in John Kukla's favor, because the tax payment was not made as part of a plea bargain or an agreement for dismissal of the charges. They further assert that John Kukla could not have bargained for dismissal of the charges, because he paid the taxes for 2002 under "duress." *Page 33 
 {¶ 89} In Baldonado v. Tackett, 6th Dist. No. WD-07-028,2007-Ohio-6879, this court observed:
 {¶ 90} "With respect to whether a prosecution has been terminated in favor of the accused, many courts rather loosely characterize this as a determination made as a matter of law. In reality, such a determination must still be premised on the facts presented. It is just that in most cases the record from the prosecution inevitably leads to one conclusion or another. If a defendant is convicted, he or she has not had the prosecution terminated in his favor. If the defendant is acquitted, this is unquestionably a favorable outcome.
 {¶ 91} "Less clear cut is when there is an indecisive termination of the proceedings which occurs when a charge is withdrawn. When a charge is withdrawn, we look to see whether the withdrawal is inconsistent with guilt. `The abandonment of the proceedings because the accuser believes that the accused is innocent or that conviction has, in the natural course of events, become impossible or improbable, is sufficient termination in favor of the accused.' Restatement of the Law, 2d, Torts (1977), 420, Section 660, Comment d. Alternatively, where a charge is withdrawn because new proceedings for the same offense have been instituted, the misconduct of the accused prevents a proper trial, mercy is requested or accepted by the accused, or there is an agreement of compromise, termination is not in favor the accused. Id. at 419-420, Section 660(a)(d)." Id., ¶ 29-30. *Page 34 
 {¶ 92} In this case, we agree with the trial court that the payment of $18.59 in back taxes by John Kukla is sufficient evidence that the charges were dismissed as a result of an agreement between the parties. The record contains no evidence to the contrary. In fact, John Kukla's unsupported claim that he paid the taxes under "duress" reinforces the trial court's conclusion that a compromise was reached in order to obtain dismissal of the charges. For these reasons, the Kuklas' argument that the prosecution was terminated in John Kukla's favor is without merit.
 {¶ 93} On consideration of the foregoing, we find that the trial court erred by dismissing the Kuklas' § 1983 claims against Cox, but did not err by dismissing their malicious prosecution claims. Accordingly, the fifth assignment of error is well-taken in part and not well-taken in part.
 {¶ 94} The judgment of the Wood County Court of Common Pleas is hereby affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this decision and judgment.
 {¶ 95} Appellees are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., Arlene Singer, J., Thomas J. Osowik, J., concur.
[1] This case originated against Devon Mowery, who is now married to appellant Brent Stevens. For the sake of clarity, she will be referred to herein as Devon Stevens.
[2] The complaint was originally filed against John Kukia, III; however, the error was corrected by the trial court. *Page 1