[Cite as *Williams v. Williams*, 2013-Ohio-3318.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| SHERRI E. WILLIAMS, | : | CASE NO. CA2012-08-074 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>7/29/2013 |
| - vs - | : | |
| | : | |
| KENNY WILLIAMS, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 11DR34675

Elizabeth Ann Yauch, 240 East State Street, Trenton, Ohio 45067, for plaintiff-appellee

Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, Kenny Williams (husband), appeals a divorce decree of the Warren County Court of Common Pleas, Domestic Relations Division. For the reasons stated below, we affirm in part and reverse in part.

{¶ 2} Husband and plaintiff-appellee, Sherri E. Williams (wife), were married in 1983 and two children were born during the marriage. During the marriage, husband worked as a

guard at Warren Correctional Institution and thus was entitled to a pension through the Public Employee Retirement System (PERS). Wife worked at a private company and contributed only to Social Security for her retirement savings.

{¶ 3} On May 16, 2011, wife filed a complaint for divorce. In her complaint, wife asserted that the parties have lived separate and apart since July 2006. Husband agreed with this date in his answer and counterclaim. Thereafter, a hearing was held regarding several issues in the divorce. During the hearing, wife made an oral motion to amend her complaint to reflect that the parties separated in July 2007. The trial court granted this motion. The parties then presented conflicting evidence as to whether they separated in July 2006 or July 2007. Additionally, the parties disputed whether a student loan debt incurred for the parties' son was a marital or nonmarital debt.

{¶ 4} After the conclusion of the hearing, the court found that the parties' marriage terminated on July 2007 because the parties continued their financial relationship up until this time. Additionally, the court ordered husband to be solely responsible for the student loan debt of the parties' son. Over husband's objection, the court also divided husband's PERS account between the parties without considering wife's Social Security benefits.

{¶ 5} Husband now appeals, raising four assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] WHEN IT PERMITTED [WIFE] TO AMEND HER COMPLAINT IN THE MIDDLE OF TRIAL.

{¶ 8} Husband's first assignment of error concerns whether the trial court committed a procedural error in allowing wife to amend her complaint during the hearing to change the termination date of the marriage. Specifically, Husband contends the termination date in wife's complaint constituted a judicial admission. Wife responds by arguing that husband has waived this argument on appeal because he did not explicitly state he was objecting to the

trial court's decision in altering the date of the marriage.

**{¶ 9}** We begin by addressing the standard of review. The failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997). The fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected. *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982).

**{¶ 10}** However, an exception to this rule occurs once a party makes his position sufficiently clear to the trial court such that the court has an opportunity to correct a mistake or defect in the charge. *DuBoe v. Accurate Fabrication*, 10th Dist. Franklin No. 98AP-842, 1999 WL 33893941 (July 20, 1999), citing *Presley v. Norwood*, 36 Ohio St.2d 29 (1973). In such circumstances, a "party does not waive his objections to the court's charge by failing to *formally* object thereto." (Emphasis sic.) *Presley* at paragraph one of the syllabus. *See also Van Scyoc v. Huba*, 9th Dist. Summit No. 22637, 2005-Ohio-6322, ¶ 16.

**{¶ 11}** In the case at bar, the record shows that husband made the trial court fully aware that he was disputing the issue in question. Specifically, husband argued that he did not believe the termination date of the marriage was in issue because wife's complaint and his answer used the same termination date for the marriage. Further, he stated he disagreed with amending the complaint during trial because he had not received a written motion to amend the complaint and thus he did not have enough time to prepare regarding the new date. Accordingly, husband made his position sufficiently clear to the trial court and he has not waived this issue.

**{¶ 12}** Next, we address whether wife's complaint constituted a judicial admission and whether the court erred when it permitted wife to amend her complaint. A judicial admission is a "formal statement, made by a party or a party's counsel in a judicial proceeding, that

- 3 -

act[s] as a substitute for legal evidence at trial." *Haney v. Law*, 1st Dist. Hamilton No. C-070313, 2008-Ohio-1843, ¶ 7. If a party "unequivocally concedes a fact, that concession constitutes a judicial admission for the purposes of trial." *Id.* The Ohio Supreme Court has recognized that judicial admissions can occur during the pleading stage. *Id.* at ¶ 8 citing *Gerrick v. Gorsuch*, 172 Ohio St. 417, 420 (1961). Pleadings containing admissions against interest are admissible as evidence against the pleader, as long as the admissions involve material and competent facts. *Haney* at ¶ 7. Therefore, "a party who has alleged and has the burden of proving a material fact need not offer any evidence to prove that fact if its judicially admitted by the pleadings of the adverse party." *Gerrick* at 420.

{¶ 13} While a pleading can constitute a judicial admission, Civ.R. 15 outlines the rule regarding the amendment of pleadings. Civ.R. 15(A) provides that parties can amend their pleadings after a responsive pleading is served by leave of court or by written consent of the adverse party.[1] A trial court should freely give a party leave to amend his pleadings when "justice so requires." Civ.R. 15(A).

{¶ 14} Other districts have found that parties may move to amend their pleadings pursuant to Civ.R. 15(A) even though the statements in the pleadings could have constituted judicial admissions before the amendment. *Stevens v. Cox*, 6th Dist. Wood No. WD-08-020, 2009-Ohio-391; *Duncan v. Charter One Bank*, 4th Dist. Scioto No. 02-CA2855, 2003-Ohio-1907. Both of these districts reasoned that while parties are generally bound by their written admissions, this rule gives way to Civ.R. 15(A), which encourages trial courts to allow parties to amend their pleadings "when justice so requires." *Stevens* at ¶ 57-58; *Duncan* at ¶ 15-16. *See also Badalmenti v. Kirkland*, 11th Dist. Lake No. 90-L-15-151(Nov. 29, 1991); *Core v. Champaign County Bd. of County Commrs.,* S.D. Ohio No. 3:11-CA-166, 2012 WL 3073418,

---

1. Since the hearing, Civ.R. 15(A) has been amended. However, these amendments are not relevant as the changes do not pertain to this case and the hearing occurred before the effective date of the amendments.

*4 (July 30, 2012).

{¶ 15} However "any admissions contained in the original pleadings still may be offered as evidence, even after a party has amended his original pleading with leave of court." *Duncan* at ¶ 16. Therefore, a party can submit both the original pleading and the amended pleading and the competing admissions contained with these pleadings will give rise to a genuine issue of fact. *Id.*

{¶ 16} Therefore, this court finds that a trial court may permit a party to amend a pleading pursuant to Civ.R. 15 even though the statements in the pleadings could constitute judicial admissions if the pleading was not amended. However, both the original pleading and the amended pleading may be used as evidence in determining the disputed fact.

{¶ 17} An appellate court reviews a trial court's decision to grant or deny a motion to amend a complaint for abuse of discretion. *Scovanner v. Ohio Valley Voices*, 12th Dist. Clermont No. CA2012-02-017, 2012-Ohio-3629, ¶ 28. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Civ.R. 15(A) favors a liberal amendment policy and a motion for leave to amend should be granted absent a finding of bad faith, undue delay, or undue prejudice. *State ex rel. Doe v. Caper*, 132 Ohio St.3d 365, 2012-Ohio-2686, ¶ 8. The primary consideration when deciding whether to grant or deny leave to amend is whether there will be actual prejudice because of delay. *Textiles, Inc. v. Design Wise, Inc.*, 12th Dist. Madison Nos. CA2009-08-015, CA2009-08-018, 2010-Ohio-1524, ¶ 83.

{¶ 18} In the present case, wife's complaint originally stated that the marriage terminated "on or about July 2006." In his answer, husband agreed that the marriage terminated on this date. During the hearing, wife moved to amend her complaint to reflect that the marriage terminated in July 2007. Wife explained that she miswrote the date of the

termination of the marriage because it had been numerous years since the physical separation. The court granted this motion reasoning husband had been on notice regarding this issue for several months. The court recorded in its notes in December 2011, five months before the hearing, that there was a dispute between the parties regarding the marriage termination date. Additionally, wife's counsel stated that the parties discussed a different termination date during a settlement conference that occurred on October 11, 2011. During the discussion, husband's counsel conceded that the parties "talked about this" issue.

{¶ 19} We find that the trial court did not abuse its discretion in permitting wife to amend her complaint. Husband was not unduly prejudiced by the amendment of the termination date because he had notice regarding the dispute for several months. Husband actually conceded that the parties talked about the termination date at settlement conference. Additionally, there is no evidence that wife amended her complaint in bad faith as the divorce proceedings occurred five or six years after the parties separated. Lastly, there are no allegations that amending the complaint caused an undue delay in the divorce proceedings. As there was no evidence of bad faith, undue delay, or undue prejudice, we find the trial court did not abuse its discretion in granting wife's motion to amend the complaint.

{¶ 20} Husband's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] IN DECIDING THAT THE TERMINATION DATE OF THE MARRIAGE WAS JULY 2007.

{¶ 23} Husband's second assignment of error challenges whether there was sufficient evidence to support the trial court's determination that the marriage terminated on July 31, 2007. In its final decision, the trial court used July 31, 2007 as the termination date of the marriage for purposes of dividing husband's retirement account. Husband argues that the

evidence established that the parties' marriage ended in 2006 as that is the date that the parties stopped living together.

{¶ 24} R.C. 3105.171(A)(2) provides that, except when the court determines it would be inequitable, for purposes of property valuation, the date of the final hearing is the date of termination of the marriage. *Fillis v. Fillis*, 12th Dist. Clermont Nos. CA2008-10-093, CA2008-10-101, 2009-Ohio-2808, ¶ 8. As this court has noted previously, "R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage is the date of the final divorce hearing." *Doyle v. Doyle*, 12th Dist. Warren No. CA2006-02-027, 2007-Ohio-2554, ¶ 15.

{¶ 25} However, the statute permits a trial court to select a different date of termination, if it considers the date of the final divorce hearing to be "inequitable." *Fillis* at ¶ 15. R.C. 3105.171(A)(2)(b) provides:

> If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court.

The Supreme Court of Ohio has noted:

> The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. * * * [T]he precise date upon which any marriage irretrievably breaks down is extremely difficult to determine, and this court will avoid promulgating any unworkable rules with regard to this determination. It is the equitableness of the result reached that must stand the test of fairness on review.

*Berish v. Berish*, 69 Ohio St.2d 318, 319-320 (1982).

{¶ 26} The trial court has broad discretion in choosing the appropriate marriage termination date for purposes of property valuation. *Id.* at 319. Therefore, we will not disturb

- 7 -

the trial court's finding absent an abuse of discretion. *Id.*

**{¶ 27}** At the hearing, wife testified that husband lived in the marital home for a portion of the week until July 2007. Wife explained that husband began sleeping away from the home four nights a week in July 2006. Husband continued this pattern until July 2007 when husband moved out of the home completely. After this date, husband stayed at the home only once more, for a period of three weeks in February 2008, when husband took care of his ailing mother in the marital home. Wife also stated that in preparation for a divorce in June 2008, she completed a parenting affidavit. The affidavit stated that both parents resided at the home until 2007 and then after 2007, only wife resided at the home.

**{¶ 28}** On the stand, husband disputed wife's assertions that he slept in the marital home a portion of the week until 2007. Instead he testified that after July 2006 he moved out of the home completely. He stated that the couple had "serious marital problems" prior to July 2006, and that he lived in the basement before moving out. After leaving the marital residence, husband moved in with another woman. Husband explained that he returned to the home only to see his children. Husband acknowledged that in February 2008, he returned to the home for three weeks to care for his mother who was recovering from surgery. However, he stated that he slept in a separate room from wife during this time.

**{¶ 29}** Husband's girlfriend also testified that she and husband began to live together in August 2006. Husband stayed with her or her cousin in Kentucky. She testified that while there were times she would take husband back to the marital residence so that he could pick up his vehicle, husband would always either stay with her or her cousin.

**{¶ 30}** The parties agreed that their financial relationship continued until 2008. Wife testified that the parties shared a joint checking account until March or April of 2008. Husband's paychecks were deposited into the account and wife used this money to meet her monthly expenses. After a series of late payments in 2008, the couple divided their bank

accounts. In 2008, wife consulted with an attorney regarding filing for divorce. However, wife and husband came to an agreement where husband would provide wife cash assistance and make monthly house payments.

{¶ 31} We find the trial court did not abuse its discretion in finding the termination date for the marriage was July 31, 2007. As there was ample evidence that the parties ended their marriage prior to the final date of the hearing, it is clear that using the date of the final hearing would be inequitable. Additionally, the evidence supported the trial court's decision in finding the termination date was July 31, 2007. In coming to its conclusion, the court reasoned that a marriage is both a social and financial relationship. The court stated that even assuming that a social relationship ended between the parties in 2006, husband and wife continued their financial relationship until 2008. It is undisputed that the parties maintained their financial relationship even after their social relationship ceased. Additionally, wife testified that husband stayed in the marital home a portion of the week from 2006 until 2007. A parenting affidavit from 2008 was introduced where wife attested to this fact. In light of these facts, we do not find that the trial court abused its discretion in finding the marriage terminated on July 31, 2007.

{¶ 32} Husband's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] IN REFUSING TO SET OFF [WIFE'S] SOCIAL SECURITY EARNINGS FROM HIS PENSION PLAN BEFORE DIVIDING THAT PENSION PLAN.

{¶ 35} Husband challenges the trial court's division of his PERS account. He argues the trial court erred when it divided PERS without considering wife's Social Security benefits. At the hearing, the trial court refused to set-off husband's PERS account by wife's Social Security benefits due to a lack of evidence regarding the Social Security benefits. The first

issue in this assignment of error is the proper reading of amended R.C. 3105.171(F)(9). The second issue is whether the trial court erred in failing to set-off husband's PERS by wife's Social Security benefits because of a lack of evidence.

## A.  Amended R.C. 3105.171

{¶ 36} In divorce proceedings, the trial court shall divide marital property equitably between the spouses.  R.C. 3105.171(B).  Retirement benefits that were acquired during the marriage constitute marital property.  *Id.* at (A)(3)(a)(ii).  However, a party's interest in Social Security benefits cannot be directly divided as a marital asset.  *Gregory v. Kottman-Gregory*, 12th Dist. Madison Nos. CA2004-11-039, CA2004-11-041, 2005-Ohio-6558, ¶ 19, 2005-Ohio-6558; *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 178 (1990).  *See* R.C. 3105.171(B).  The prohibition against dividing Social Security benefits has raised policy concerns where one spouse is a public employee who does not contribute to Social Security while the other spouse is a private employee who does contribute.  *See Eickelberger v. Eickelberger*, 93 Ohio App.3d 221, 227 (12th Dist.1994).  In not considering Social Security benefits when dividing retirement plans, the public employee spouse is effectively penalized because his or her "equivalent of Social Security" is subject to division while the other spouse's Social Security benefits are not.  *Id.* at 227.

{¶ 37} Recently, R.C. 3105.171(F)(9) has been amended to provide:

> *In making a division of marital property* and in determining whether to make and the amount of any distributive award under this section, *the court shall consider* all of the following factors:
>
> * * *
>
> (9) Any retirement benefits of the spouse, *excluding the social security benefits* of a spouse *except as may be relevant for purposes of dividing a public pension.*

(Emphasis added.)

{¶ 38} We interpret amended R.C. 3105.171(F)(9) as mandating that trial courts

consider retirement benefits as well as Social Security benefits when dividing a public pension. However, trial courts have the discretion to determine whether these benefits are relevant for purposes of dividing a public pension. This reading is supported by the plain language of R.C. 3105.171(F)(9). The first sentence of the statute states that a court "shall" consider the following factors, which includes the "retirement benefits" subsection, subsection (9). The use of "shall" makes consideration of every factor *mandatory*, including subsection (9)'s language regarding Social Security benefits for public pensions. The provision "may be relevant" applies to whether Social Security benefits for purposes of a public pension are *relevant.* Therefore, the court "shall" consider retirement benefits, including Social Security benefits when dividing a public pension. However, the court "may" determine that those benefits are not relevant for purposes of dividing a public pension and not consider them.

{¶ 39} Since the amendment of the statute, the Eleventh and Fifth Appellate Districts have also come to this conclusion. *Thompson v. Thompson*, 197 Ohio App.3d 610, 2011-Ohio-6689 (11th Dist.); *Runser v. Runser*, 5th Dist. Stark Nos. 2010CA00258, 2010CA00317, 2011-Ohio-3327. In *Thompson*, the Eleventh District found that a trial court abused its discretion when it refused to set-off a spouse's Social Security benefits. During the trial, the court stated it would not consider Social Security benefits because the court believed the benefits were too speculative due to the parties' ages. *Id.* at ¶ 24. The appellate court disagreed, reasoning that these benefits must be considered under the statute. Specifically, the court stated:

> Neither the ages of the parties nor their ability to determine what benefits may be received are factors *required* to be considered under R.C. 3105.171. By modifying R.C. 3105.171, the legislature *mandated* that courts "shall consider * * * [a]ny retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension.

(Emphasis added.) *Id.* at ¶ 25.

- 11 -

{¶ 40} In *Runser* the Fifth District found that a trial court did not abuse its discretion when it did not order a set-off of one spouse's Social Security benefits from another spouse's public pension. At trial, the court considered the Social Security benefits but found it was not appropriate to set-off the benefits from the other spouse's public pension. *Id.* at ¶ 38. In discussing whether the trial court erred in not setting-off the Social Security benefits, the appellate court looked to amended R.C. 3105.171. *Id.* at ¶ 37. The court found that setting off Social Security benefits was discretionary and focused on the language in the statute that provided Social Security benefits may be considered in dividing public pensions "as may be relevant." *Id.* Therefore, it concluded, "[R.C. 3105.171(F)(9)] still seems to leave it to the discretion of the trial court as to whether to consider said benefits in dividing a public pension." *Id.*

{¶ 41} While the courts in *Thompson* and *Runser* came to different conclusions, the opinions are not in conflict because they focused on different parts of the statute. In *Thompson*, the appellate court focused on the mandatory language of the statute. However, in *Runser* the appellate court looked to the discretionary portion of the statute, "as may be relevant." Additionally, the trial court in *Thompson* stated that it would not consider Social Security benefits because they were too "speculative." The trial court's focus on the speculative nature of Social Security benefits showed that it refused to consider Social Security benefits at all, instead of determining that the benefits were not relevant under the facts of this particular case. Conversely, in *Runser*, it is clear that the trial court considered the Social Security benefits but simply found that it would not be "appropriate" to set-off benefits under the circumstances of that case.

{¶ 42} Therefore, amended R.C. 3105.171(F)(9) mandates that trial courts consider retirement benefits as well as Social Security benefits when dividing a public pension. However, trial courts have the discretion to determine whether these benefits are relevant for

purposes of dividing a public pension.

### B. Evidentiary requirements for Social Security Set-Offs

{¶ 43} The second issue is whether the trial court abused its discretion, in light of amended R.C. 3105.171(F)(9) and past case law, in refusing to order a Social Security set-off due to insufficient evidence.

{¶ 44} In *Eickelberger*, 93 Ohio App.3d at 228, this court prescribed the method the trial court must use when considering a set-off of Social Security benefits from a spouse's public pension.[2]

> [T]he court should begin an analysis by calculating [a spouse's] potential future monthly Social Security benefits and [the other spouse's] potential future PERS monthly benefit. The court may then offset [the spouse's] potential monthly Social Security benefits against [the other spouse's] potential PERS monthly benefit. The trial court can then equitably apportion the balance of the parties' marital assets.

{¶ 45} Prior to the amendment of R.C. 3105.171(F)(9), courts have held that "when no evidence is offered by the parties showing the value of either of the spouse's Social Security benefits, the trial court should direct them to submit the evidence. A trial court's failure to make specific findings about the court's treatment of the Social Security benefits in reaching a property division order constitutes an abuse of discretion." *DeChristefero v. DeChristefero*, 11th Dist. Trumbull No. 2001-T-0055, 2003-Ohio-3065, ¶ 30. *See also Simon v. Simon*, 6th Dist. Sandusky No. S-98-044 (Feb. 12, 1999); *Risner v. Risner*, 4th Dist. Jackson No. 04CA757, 1995 WL 767360, *3 (Dec. 28, 1995).

{¶ 46} During wife's testimony she explained she had contributed to the Social Security system. While husband introduced a form into evidence which purportedly

---

2. *Eickelberger* also stated that prior to issuing a set-off, a trial court must determine whether a party's right to Social Security benefits vested during the marriage. *Id.* at 228. However, this court has subsequently held that for purposes of dividing marital assets upon a divorce, there is no requirement that retirement benefits vest during the marriage. *Haller v. Haller*, 12th Dist. Warren No. CA95-06-063 (Mar. 18, 1996).

explained wife's Social Security benefits, the trial court indicated it needed an expert to explain the exhibit. The court also indicated that it was never aware this was an issue until after the trial concluded. In the court's judgment entry, it stated that "[a]ll retirement plans have been disclosed. The Wife has no retirement accounts or benefits." The court then proceeded to award wife one-half of the value of husband's PERS account accumulated during the marriage.

{¶ 47} We find that the trial court erred in not considering whether to set-off husband's PERS by wife's Social Security benefits. As stated above, several districts have found that a trial court cannot fail to conduct a Social Security setoff due to a lack of evidence. While the above-mentioned cases were decided before the amendment of R.C. 3105.171(F)(9), our reading of the statute also supports this proposition. Though R.C. 3105.171 leaves it up to the trial court to determine whether Social Security benefits are "relevant," this does not affect the requirement that a trial court must consider Social Security benefits. In order for a court to consider Social Security benefits and to determine whether they are "relevant," the trial court needs evidence to be fully apprised of the parties' retirement benefits.

{¶ 48} Therefore, R.C. 3105.171(F)(9) requires that when a trial court is dividing marital assets in a divorce, it shall consider the parties' retirement benefits, including Social Security benefits for purposes of dividing a public pension. However, the court only needs to conduct a setoff of Social Security benefits when it finds the Social Security benefits to be relevant for dividing a public pension. Additionally, the trial court cannot fail to decide whether to set-off Social Security benefits due to a lack of evidence. Instead, if the court needs more information regarding setting off Social Security, it should direct the parties to submit more evidence. We note that the trial court should direct wife to submit additional evidence as to the Social Security benefit as wife is the only person that will have access to her account information. It is then within the trial court's discretion to consider wife's Social

Security benefits and not order a setoff because the benefits are not relevant for purposes of dividing husband's PERS account.

{¶ 49} Appellant's third assignment of error is sustained.

{¶ 50} Assignment of Error No. 4:

{¶ 51} THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] WHEN IT ORDERED [HUSBAND] TO BE SOLELY RESPONSIBLE FOR THE PARTIES' SON'S COLLEGE DEBT.

{¶ 52} Husband challenges the trial court's decision ordering him to be responsible for the entirety of the son's college debt. Husband argues that when the court chose to unequally divide this debt, it was required to issue written findings of fact. Additionally, husband contends that it was unfair to require him to be responsible for the debt merely because if the parties had filed for divorce earlier, he would have had to pay more money in child support.

{¶ 53} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Boyer v. Boyer*, 12th Dist. Butler Nos. CA2010-04-083, CA2010-05-109, 2011-Ohio-989, ¶ 6. Initially, pursuant to R.C. 3105.171(B), "the court shall * * * determine what constitutes marital property and what constitutes separate property." "Because the trial court must consider the assets and liabilities of both parties, dividing marital property requires the trial court to also divide marital debt." *Wolf v. Wolf*, 12th Dist. Preble No. CA2009-01-001, 2009-Ohio-3687, ¶ 23. *See* R.C. 3105.171(F)(2). A trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence, and an appellate court will not reverse the trial court's classification if it is supported by competent and credible evidence. *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 10.

{¶ 54} After classifying the assets and debts as separate or marital property, "the court

shall disburse a spouse's separate property to that spouse" and divide the marital property equally, unless the court finds an equal division would be inequitable. R.C. 3105.171(C)(1) and (D). The trial court is given broad discretion in fashioning a property division and will not be reversed absent an abuse of that discretion. *Roberts v. Roberts*, 12th Dist. Clinton No. CA2012-07-015, 2013-Ohio-1733, ¶ 34.

{¶ 55} Pursuant to R.C. 3105.171(G), a trial court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97 (1988); *Mannerino v. Mannerino*, 12th Dist. Butler No. CA2010-08-210, 2012-Ohio-1592, ¶ 19. "This requirement is especially important where the division results in an unequal distribution of property." *Brown v. Brown*, 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 32. This court has stated that the objective of the findings of fact authorized by R.C. 3105.171(G) is to facilitate meaningful appellate review consistent with Civ.R. 52. *Hoover v. Hoover*, 12th Dist. Clinton No. CA93-03-008, 1993 WL 437695, * 3 (Nov. 1, 1993). The requirements of the statute are satisfied when the reviewing court is able to ascertain the requisite information from various portions of the record, including the trial court's decision. *Id.*

{¶ 56} At the hearing, wife and husband testified that in 2004, their son attended Wittenberg University. Wife explained that husband agreed to pay a portion of son's college expenses that were not covered by financial aid. She stated the agreement was solely between husband and son. On the other hand, husband testified that he was not to be solely responsible for the loan. He stated he and wife were married and living together at the time and that the payments for the student loan came out of the parties' joint bank account.

{¶ 57} Additionally, the parties explained that they lived apart for some time prior to filing for divorce. While the date of separation was contested, the parties agreed that in 2008

instead of filing for divorce, they agreed to live separately to allow wife to repair her credit so that she could eventually refinance the house in her own name and allow husband to avoid child support payments. Thereafter, husband made the monthly mortgage payments on the home while also providing monetary assistance to wife and the parties' daughter during the time she was under 18. Husband continued to make the monthly mortgage payments and provide wife financial support until the date of the hearing.

{¶ 58} In the trial court's judgment entry, it divided the outstanding debts between the parties and ordered husband to be responsible for the student loan. While the entry does not engage in further discussion regarding the student loan, the court also issued its decision from the bench. The court stated:

> Because I think that [husband] has received some benefit as a result of not filing the divorce back when he would have and would have (sic) potentially had to pay some additional monies here, I'm going to make him be entirely responsible for the student loan. The court is unable to determine from the testimony uh exactly what you folks agreed to. Both of you seem to be credible folks here but uh in terms of the support or property division here the court finds it appropriate and reasonable that uh [husband] pay the entire student loan.

{¶ 59} We begin by finding that the trial court's decision provided sufficient information to comply with R.C. 3105.171(G). While the court did not expressly characterize the loan as "marital" or "nonmarital," the court stated that it is "appropriate and reasonable" that the loan be distributed to husband. The court's discussion of the reasonableness of giving the loan to husband shows that it considered the loan to be marital, otherwise it would have not considered equity factors for dividing the loan. Additionally, the court's statement that the parties agreed to some portion of the loan also supports the marital finding. Therefore, there is sufficient information to review the trial court's decision regarding the student loan debt.

{¶ 60} Next, we find that the trial court did not abuse its discretion in making husband solely responsible for the student loan debt. The determination that the debt was a marital

debt was supported by competent and credible evidence as husband testified that the parties jointly entered into the debt. Additionally, while the trial court did not equally distribute the debt, it did *equitably* distribute the debt. Husband's income is significantly greater than wife's income. Further, husband was most likely able to avoid significant child support payments because the parties delayed filing for divorce. While parents are not responsible for the education expenses of their adult children, at least one parent voluntarily agreed to pay for the debt. *See Wiener v. Wiener*, 12th Dist. Warren No. CA2012-09-085, 2013-Ohio-1849, ¶ 19. Trial courts enjoy broad discretion in dividing marital property. In light of this discretion and the particular circumstances of this case, we find the court did not abuse its discretion in ordering husband to be responsible for the debt.

{¶ 61} Husband's fourth assignment of error is overruled.

{¶ 62} The trial court's judgment is affirmed in part and reversed in part. Husband's first, second, and fourth assignments of error are overruled. Husband's third assignment of error is sustained as the court erred in not considering wife's Social Security benefits due to a lack of evidence. Therefore, this cause is reversed and remanded for further proceedings regarding the potential set-off of wife's Social Security benefits from husband's PERS account. On remand, the trial court must consider wife's Social Security benefits. The trial court cannot fail to decide this issue due to a lack of evidence. However, the court may find that wife's Social Security benefits are not relevant for purposes of dividing husband's PERS account.

HENDRICKSON, P.J., and PIPER, J., concur.