[Cite as *Fisher v. Fisher*, 2017-Ohio-221.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DIANE E. FISHER | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26993 |
| | : | |
| v. | : | T.C. NO. 14DR588 |
| | : | |
| PAUL E. FISHER | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____20th____ day of _____January_____, 2017.

. . . . . . . . . .

CHARLES D. LOWE, Atty. Reg. No. 0033209, 8087 Washington Village Drive, Suite 102, Dayton, Ohio 45458
　　　Attorney for Plaintiff-Appellee

CHRISTOPHER A. DEAL, Atty. Reg. No. 0078510, 2541 Shiloh Springs Road, Dayton, Ohio 45426
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Paul E. Fisher, filed January 21, 2016. Paul appeals from his and Diane Fisher's December 22, 2015 Final Judgment and Decree of Divorce, asserting that he overpaid the amount of temporary support ordered while the parties' divorce was pending.   We hereby affirm the judgment

of the trial court.

{¶ 2} Diane Fisher filed her Complaint for Divorce on June 20, 2014, alleging that the parties are incompatible. The complaint provides that the parties were married on June 24, 1978, and that two children were born as issue of the marriage, both of whom are emancipated adults. Paul filed an answer and counterclaim on July 9, 2014.

{¶ 3} On July 28, 2014, Diane filed a Motion for Temporary Support. Therein she asserted that she moved from the marital residence on July 18, 2014 and "now has a substantial need for support." She asserted that her annual income is $10,000.00, and that Paul's annual income is "at least" $227,000.00. On August 6, 2014, the court issued a Temporary Order requiring Paul to pay "the sum of $500.00 per month, commencing August 13, 2014," through the Ohio Child Support Payment Central, along with a two percent processing fee. The court further ordered Paul to pay to Diane "by way of temporary spousal support, the sum of $963.00 per month beginning 08/01/14." The Temporary Order provides that if "plaintiff is residing in the marital residence, defendant shall have the right, option and privilege of discharging this monthly spousal support by paying the mortgage/rent (including taxes and insurance) and basic utilities at the marital residence. If plaintiff is not residing in the marital residence, defendant shall pay the monthly spousal support directly to Plaintiff."

{¶ 4} On August 14, 2014, Diane filed a Request for Oral Hearing on Temporary Order, and a hearing was scheduled for September 2, 2014 before the Magistrate. On that date, Diane testified that she is employed at Victoria's Secret as a customer representative and a floor supervisor, and that she works three or four days a week. She stated that while her financial disclosure affidavit provides that she earns $10,000.00, she

can earn as much as $12,400.00. She stated that while she listed "Country Club" and "UD games" as expenses, those expenses have been eliminated. She testified that $4,000.00 is an accurate monthly expense total.

{¶ 5} Paul testified that he is vice president and treasurer for Dayton Superior Corporation. He testified that his basic salary is $174,000.00, and that he is on a bonus plan. Paul stated that he received his 2013 bonus in March of 2014, and that he received $115,000.00, which after taxes was $80,000.00, of which Diane took half when the parties separated. He testified that Diane has a master's degree and previously worked as a teacher.

{¶ 6} On November 6, 2014 a Magistrate Order was issued. Paul was ordered to pay spousal support of $4,000.00 a month, commencing August 13, 2014. The order provides: "It is further ordered that husband shall make all said temporary spousal support payments to wit, $4,080, which includes the 2% SEA processing fee, by cash, certified check, or money order, through the Ohio Child Support Payment Central * * *."

{¶ 7} Paul filed objections on November 19, 2014. Paul asserted as follows:

The Magistrate's Order contains many inconsistencies. For example, the Plaintiff was questioned extensively as to the expenses she listed on her Amended Affidavit of Financial Disclosure filed July 8, 2014. She listed Basic Telephone (excluding long distance) at $208/month, and cell phone/home maintenance at $300 a month. The Plaintiff does not have a "basic telephone" and had moved into an apartment! There was no explanation as to what "home maintenance" she would incur. In addition, and the Magistrate did in fact note in her Order, the Plaintiff does not pay

country club dues or monthly cost for UD Game tickets. The insurance is paid by the Defendant, and he is restrained from removing the Plaintiff or her vehicle from his policy. Thus she does not pay insurance costs of $120/month. The Defendant provides medical insurance, which covers the majority of medical expenses. However, the Plaintiff elected to have cosmetic treatments, which she indicates costs $400/month.

As to the issue of the Defendant's wages, the Magistrate noted that his base salary is $174,000 per annum. After taxes he is left with approximately $120,000, which is approximately $10,000/month. The Defendant resides in the marital residence and does have home maintenance, he does pay country club dues, insurance (including medical for both parties), utilities for the residence, etc.

The Magistrate also noted that the Defendant's bonus of $115,000 was already paid. The net amount was deposited into the joint savings account, of which the Plaintiff took one half when she filed for divorce, as noted. The Defendant will not get another bonus until 2015 if his company continues to do well.

Therefore, if the Defendant nets $10,000 per month and is ordered to pay the Plaintiff $4,000, he would be left with $6,000 out of which he is expected to pay all the marital bills, insurance, dues, etc., while the Plaintiff has only her living expenses.

In addition to the above, the original Temporary Order was for $500 a month as and for temporary spousal support to be paid through CSEA,

plus the sum of $963.00 for the Plaintiff's living expenses to be paid directly to the Plaintiff as she no longer resided in the marital residence. The Defendant is current in those payments. The Magistrate Order has increased the temporary spousal support to $4,000 per month, beginning August 1, 2014 to be paid through CSEA. The CSEA's records will not credit this Defendant with the $963/month he has paid directly to the Plaintiff.

{¶ 8} On November 21, 2014, Paul filed an Amended Motion to Set Aside Magistrate's Order Filed Herein on 11/06/2014 that is duplicative of the initial objections. On February 6, 2015, Paul filed a Supplemental Memorandum to Set Aside Magistrate's Order Filed Herein on 11/06/2014. He asserted that he paid Diane $963.00 for the months of August, September, October, and November 2014, and that the "Montgomery County CSEA needs to be ordered to correct their records to reflect his credit." He asserted that Diane's counsel "repeatedly stated the Defendant had the sum of $14,000 per month to live on. The Defendant pays taxes on his income of approximately 31%." He argued that Diane "admitted that she does not pay $208/month for a landline phone, nor does she have any home maintenance." Paul argued that "it appears her housing expenses would be as follows: Rent - $1,350; Utilities - $300; Water and Sewer - $50; Basic Phone $35; Cell phone (she pays for her parents and the parties' daughters, as well as her own) $208, for a total of $1,943/month."

{¶ 9} Paul argued that Diane:

* * * does insist that the $600 month (sic) for groceries as listed, includes taking her daughters out to eat; her gas is approximately

$120/month; her vehicle is under warranty and she gets free oil changes; she does not paid (sic) for car insurance (the Defendant does); she does pay for her medical expenses $400/month (some months it is nothing and the majority is botox and laser, which is not covered by insurance), and apparently purchases approximately $200/month for clothing; and $140/month for hair and nails for a total of $1,460/month.

{¶ 10} Paul argued that Diane's monthly expenses total $3,403.00 and that she "nets approximately $850/month." He asserted that his net income is $10,000.00, and that "he had always taken out the maximum possible to be put into his 401(k) (which was $22,500/annum), which is another $1,875/month from his monthly net wages." Paul argued that taking from his "monthly income of approximately $10,000, the $4,000 paid to [Diane] and the $1,875 that leaves the Defendant $4,125 a month to cover all the marital expenses." He asserted that Diane could continue her customary lifestyle if he paid her $2,600 per month.

{¶ 11} Diane did not respond to Paul's objections. On May 7, 2015, the court issued a Decision and Judgment. The court determined that Diane's housing expenses total $2,025.00 a month, and that her "Other" expenses total $958.00. The court noted that this "amount shall be effective August 14, 2014." Regarding Paul's assertion that the Magistrate did not give him credit for the amounts he paid directly to Diane, the court noted that "[n]o evidence was presented to prove exactly how much money had been paid directly to Diane. Therefore, the court cannot order the SEA to give Paul credit for these unknown amounts." The Court ordered Paul to pay temporary spousal support in the amount of $2,983.00 per month, effective August 14, 2014. The order provides:

"Paul shall make all said temporary spousal support payments, in the amount of $3,042.66 per month, representing $2,983.00 per month for spousal support, plus the 2% SEA processing fee, by cash, certified check, or money order, through Ohio Child Support Central, * * *."

{¶ 12} On May 12, 2015, Diane filed a Motion for Reconsideration. Therein she asserted that Paul understated his income by $95,000.00. Diane asserted that the reduction in her temporary support "creates a significant hardship since the retroactive nature of the Decision causes her to now owe Defendant $9,153 as of May 2015." Paul opposed the motion on May 15, 2015. He argued that Diane had taken half of his bonus when the parties separated, and that "the retroactive nature of the decrease should not cause undue hardship on the Plaintiff, anymore (sic) than the retroactive nature of the increase placed on the Defendant by the Magistrate's Decision filed November 6, 2014." Diane filed a Reply to Defendant's Motion Contra to Plaintiff's Motion for Reconsideration. She asserted in part that "she can rely upon savings (assets) to pay the retroactive amount caused by this Court's overruling the Magistrate's recommendation but that flies in the face of the purpose of spousal support."

{¶ 13} On June 9, 2015, the court issued an Entry and Order that provides that Diane's motion for reconsideration would be heard at the parties' final contested hearing on July 17, 2015. At the hearing, Paul testified that he overpaid temporary spousal support by $8,728.29. The following exchange occurred between Paul and the court in the course of direct examination:

THE COURT: I have a quick question for you sir, if I could. * * *

Was the temporary spousal support paid through the CSEA or did you make

those payments either directly to your wife or in lieu of a mortgage or something of that nature?

THE WITNESS:   Um, initially from July of 2014 through April of 2015, it was a combination.   There was some taken through the payroll deduction through the CSEA and I paid the rest of it direct.   Starting with - - I think it was the May 1st payment, the full temporary amount came out of my paycheck to the agency.

BY MR. GUMP:

Q.   May 1st of this year?

A.   May 1st - - yes, May 1st of 2015.

THE COURT:   So commencing May 1 of 2015, whatever you paid was directly from - -

THE WITNESS:   My paycheck.

THE COURT:   - - from the CSEA?   Prior to that, you may have made direct payments to her - -

THE WITNESS:   Correct.

THE COURT:   - - under your obligation?

THE WITNESS:   Yes.

{¶ 14}   The following exchange occurred on redirect examination:

BY MR. GUMP:

Q. I'm going to ask you how you came up with that.   Is this the order of payments that you pay both through the Support Enforcement Agency, the bank, did you make a list of those?

A. Yes. Every time I made a payment either out of my paycheck to agency or directly to her, I recorded them and have a record of them which includes the adjustments.

Q. Okay. And that would indicate, No. 1, what your obligation was and what you paid?

A. Correct, based on the very - -

THE COURT: Are we going to mark that as an exhibit or - -

THE WITNESS: It is. I'm sorry, it's Q.

MR. GUMP: That's all I have, Judge.

{¶ 15} The following exchange occurred on re-cross examination:

BY MR.LOWE:

Q. Tell the Court when you first paid any spousal support.

A. Umm, it looks like August 18 was the pay date to August 13 to - - I guess August 13. Doesn't make sense, but that's - - oh, that's the (inaudible) that's a $4,000 monthly charge or monthly support. So August 13th of the (inaudible) to the 13th of September.

Q. May I see it?

A. Okay. Those dates I was using for my payroll. I'm not sure how to match them exactly with the order dates. The order dates, I'm not sure if that's the dates that I recorded when I made the payments.

MR. LOWE: Nothing further.

{¶ 16} On September 24, 2015, the court issued a Decision that provides in relevant part as follows:

* * *

Paul testified that he believes he has overpaid his spousal support account by $8,728.29. Paul testified that he paid Diane directly for a period of time and that those payments are not reflected through the Montgomery County Child Support Enforcement Agency's (CSEA) records. Paul acknowledges that all of the payments have been made through the CSEA since May of 2015.

Paul testified that Diane removed $40,000.00 from a PNC Account during the course of the parties' divorce.

The court was provided and (sic) Audit from the (CSEA) at the final hearing. That Audit indicated that the total spousal support obligation due as of June 30, 2015 was $31,830.00. The CSEA records indicate that they received $5,356.94. Paul testified that he made an additional two payments through the CSEA after the Audit was conducted, but prior to the commencement of the hearing in this matter. Paul also testified that he made direct payments to Diane in the amount of $33,113.78. However, Paul did not provide any documentation evidencing these payments, other than a summary statement that he provided the court.

Diane made no request in this matter for a temporary spousal support arrearage that the court is aware of. The court would assume, as a result, that Diane believes that the temporary spousal support account is at least in balance.

The court finds that Paul has failed to meet his burden of proof in

proving an overpayment. Paul only provided a self serving (sic) document with no cancelled checks, etc. However, Diane has not requested a finding on any Temporary Order arrearage. As a result, the court finds that Paul is current in his Temporary Order obligation and the account is set in balance, with neither an overpayment nor an arrearage.

{¶ 17} On October 9, 2015, Paul filed a Motion for Reconsideration of the finding that he "failed to meet his burden of proof in proving an overpayment under the temporary order." Paul directed the court's attention to Diane's May 12, 2015 Motion for Reconsideration, wherein she asserted that the retroactive nature of the court's reduction in temporary spousal support "causes her to now owe Defendant $9,153 as of May 2015." Paul asserted that this "is an admission that the Defendant had in fact been paying the Plaintiff directly as Defendant testified to during the final hearing on July 17, 2015." He asserted that counsel for Diane only asked him about when the temporary support commenced, and "did not question Defendant whatsoever regarding temporary support overage or arrearage." Paul sought reimbursement in the amount of $8,728.29.

{¶ 18} On October 27, 2015, Plaintiff's Response to Defendant's Motion for Reconsideration was filed. On November 18, 2015, the court issued a Decision and Judgment on Paul's Motion for Reconsideration. The court determined as follows:

Paul acknowledges that he did not present the court with any documentation evidencing his payment of the Temporary Order. However, Paul asserts that, as a result of Diane's attorney not asking her about any overpayment or arrearage, Paul's testimony should be accepted. Additionally, Paul contends that in Diane's Motion for Reconsideration filed

on May 12, 2015, Diane stated that if reduction of Paul's temporary spousal support was sustained, that it would result in a significant hardship to Diane causing her to owe Paul $9,153.00 as of May, 2015. As noted in Diane's Response, language in her Memorandum is not evidence, and therefore, not deemed an admission.

As previously stated, Paul provided no documentation to the court evidencing his payments to Diane, and as a result, the court finds that Paul has failed to meet his burden of proof in proving an overpayment, and therefore, finds that Paul's Motion for Reconsideration filed October 9, 2015 is found not to be well taken and is hereby DENIED.

{¶ 19} In the parties' final decree, the court awarded spousal support to Diane in the amount of $4,500.00 per month commencing August 2015. The court noted that the award was based upon Paul's severance income of $176,000.00 and Diane's imputed annual income of $17,000.00. Regarding the temporary order, the decree provides that "there is no overpayment or underpayment of the Temporary Support Order. Therefore, Husband is current in his Temporary Order obligation."

{¶ 20} Paul asserts a single assignment of error herein as follows:

THE TRIAL COURT ERRED WHEN IT DISREGARDED THE UNCONTROVERTED TESTIMONY THAT PAUL OVERPAID UNDER THE TEMPORARY SPOUSAL SUPPORT ORDER AND DESERVED CREDIT.

{¶ 21} Paul asserts that when his temporary support was reduced from $4,000.00 to $2,983.00 per month, effective August 14, 2014, the reduction of $1,017.00 per month in his obligation created an overpayment in that amount per month from August 2014 to

May 2015 (not taking into effect the 2% processing fee). He argues that "[n]o one contested this, either through cross-examination or through subsequent testimony. Finally, no exhibits were introduced that put Paul's testimony at issue." Paul directs our attention in part to *Avery v. Avery*, 2d Dist. Greene Nos. 2002 CA 121, 2003 CA 1, 2002 CA 105, 2003-Ohio-4975, in which this Court determined that the trial court "failed to correctly credit [Joseph Avery] for the payment of health care premiums. There is uncontroverted testimony on page 17 of the January 17, 2003 transcript that Joseph pays $1,321 in health care premiums. However, the trial court only credited him for payment of the dental insurance premium." *Id.*, ¶ 31.

{¶ 22} Paul further directs our attention to *Marron v. Marron*, 12th Dist. Warren Nos. CA2013-11-109, CA2013-11-113, 2014-Ohio-2121, which held in part as follows:

However, we find that the trial court abused its discretion in finding Wife voluntarily underemployed. Husband presented insufficient evidence during the hearing to prove that Wife was voluntarily underemployed. In fact, the court's finding of Wife's voluntary underemployment is in direct conflict with Wife's uncontroverted testimony as to her efforts to obtain work. Husband offered no testimony or evidence at the hearing to refute Wife's testimony and failed to elicit any testimony from Wife on cross-examination that established she was not seeking full-time employment or that she had turned down full-time employment. Instead, Wife's testimony clearly established that she had made every reasonable effort to obtain a full-time teaching position by the date of the hearing. Additionally, we note that there was no evidence that supported using $40,000 to impute income for

a teacher in the Mason area. Therefore, the trial court abused its discretion in finding that Wife was voluntarily underemployed and imputing $40,000 of annual income to her.

*Id.*, ¶ 50.

**{¶ 23}** Paul asserts that herein "there was uncontroverted testimony that Paul had overpaid Diane. He testified that he paid $4,000.00 in spousal support beginning in August, 2014 until April, 2015. At that point the trial court lowered the temporary spousal support, retroactively, by $1,017.00 per month. The CSEA audit would not track this fully because Paul made payments directly to Diane per the original order." Paul again asserts that Diane admitted to the overpayment in her Motion for Reconsideration, and he argues that the "only way that [Diane] would have owed Paul based on the retroactive nature was if he had overpaid her based on the prior orders."

**{¶ 24}** Paul directs our attention to *Williams v. Williams*, 2013-Ohio-3318, 996 N.E.2d 533, ¶ 12 (12th Dist.), which provides:

Next, we address whether wife's complaint constituted a judicial admission and whether the court erred when it permitted wife to amend her complaint. A judicial admission is a "formal statement, made by a party or a party's counsel in a judicial proceeding, that act[s] as a substitute for legal evidence at trial." *Haney v. Law*, 1st Dist. Hamilton No. C070313, 2008-Ohio-1843, ¶ 7. If a party "unequivocally concedes a fact, that concession constitutes a judicial admission for the purposes of trial." *Id.* The Ohio Supreme Court has recognized that judicial admissions can occur during the pleading stage. *Id.* at ¶ 8 citing *Gerrick v. Gorsuch*, 172 Ohio St. 417,

420, 178 N.E.2d 40 (1961). Pleadings containing admissions against interest are admissible as evidence against the pleader, as long as the admissions involve material and competent facts. *Haney* at ¶ 7. Therefore, "a party who has alleged and has the burden of proving a material fact need not offer any evidence to prove that fact if it is judicially admitted by the pleadings of the adverse party." *Gerrick* at 420, 178 N.E.2d 40.

**{¶ 25}** Finally, Paul asserts that even "if this Court does not find that the above-statement was an admission, the fact remains that the testimony of Paul was uncontroverted and should not have been disregarded. The trial court abused its discretion in doing so, and the matter should be reversed and remanded to give Paul credit for the amount of spousal support that he overpaid."

**{¶ 26}** In response, Diane asserts Paul's "testimony was controverted. The Child Support Enforcement Agency's audit revealed that Husband had underpaid his temporary support obligation by $31,830. Husband did not object to the Court considering the audit. Thus, this is not a case where the court ignored uncontroverted evidence." Diane argues that the trial court "considered husband's testimony and the conflicting testimony of the CSEA, and, utilizing its wide latitude of discretion afforded in spousal support cases, determined that husband had not overpaid temporary spousal support."

**{¶ 27}** Diane asserts that "*Marron* is not a case where the evidence was not contested. Rather, it is a case where the evidence was contested, but the trial court found husband's evidence to be insufficient, as it was in the instant case. Here, the Court considered Husband's testimony that he overpaid, and it considered CSEA's evidence

that he underpaid." Diane asserts that because the court has "wide latitude and discretion in determining spousal support matters, its decision that Husband did not overpay his spousal support obligation should not be disturbed."

{¶ 28} Finally, Diane argues that the "trial Court did not act upon Wife's Motion for Reconsideration." She argues that the language at issue in her Motion for Reconsideration, namely that the trial court's retroactive decision "causes her to now owe Defendant $9,153 as of May 2015," is not an admission but "is argument and nothing more." Diane asserts that "[a]t most, it was a description of a hypothetical fact pattern underscoring the inequity of the Trial Court's lowering her spousal support."

{¶ 29} R.C. 3105.18(C)(1) governs awards of spousal support. "Trial courts have broad discretion regarding spousal support orders. Accordingly, an appellate court ordinarily will not disturb those orders absent an abuse of discretion." *Young v. Young*, 2d Dist. Darke No. 2012 CA 1, 2012-Ohio-5310, ¶ 16. An abuse of discretion "has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeons, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985). A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc.* [v.] *River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 553 N.E.2d 597 (1990)." *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 7.

{¶ 30} We initially note that the CSEA audit, which, according to the trial court, reflected an underpayment of temporary support as of June 30, 2015 of $31,830.00, is not part of the record before us. Nor was any mention of the audit made at the final hearing. Pauls' Exhibit Q is entitled "Temporary Spousal Support Bi-Weekly Payment

Documentation." It is divided into two sections, one denominated, "Based on Nov 6, 2014 Court Ordered Spousal Support," and one denominated, "Based on May 7, 2015 Court Order." The document reflects the payments Paul asserts that he made directly and via payroll deductions from August 13, 2014 through August 21, 2015, reflecting an overpayment of $8,728.29. The document indicates that Paul made direct payments to Diane totaling $33,113.78.

{¶ 31} We note that the Magistrate's order of November 6, 2014 and the Court's decision on Paul's objections both required Paul to pay all of the temporary support ordered through the agency. It is clear that the trial court discredited Paul's testimony about the overpayment, and we agree with the court that Paul produced no evidence in the form of cancelled checks or bank statements to establish the overpayment. We note that prior to the final hearing, the court indicated in its decision on Paul's objections that "[n]o evidence was presented to prove exactly how much money has been paid directly to Diane." We cannot conclude that Diane's assertion regarding the hardship of potential repayment in her motion for reconsideration is the type of judicial admission discussed in *Williams*; a motion for reconsideration is not a pleading within the meaning of Civ.R. 7(A). Finally, for the foregoing reasons, we cannot conclude that the trial court abused its discretion in concluding that, in the absence of effort from Diane to recover the arrearage reflected on the audit by the agency, that Paul was current in his temporary support obligation. Accordingly, Paul's assigned error is overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Charles D. Lowe
Christopher A. Deal
Hon. Timothy D. Wood